**UNITED STATES of America, Plaintiff,**

v.

**Lawrence Edward BROWN, Defendant.**

**Crim. A. No. 1846.**

United States District Court
D. Delaware.

May 13, 1968.

Supplemental Opinions June 21, 1968 and Sept. 18, 1968.

Alexander Greenfeld, U. S. Atty., and John P. Brady, Asst. U. S. Atty., Wilmington, Del., for plaintiff.

Ben T. Castle, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant.

## OPINION

STEEL, District Judge.

The indictment charges that defendant, in violation of 50 U.S.C. App. § 462 (1964), willfully and knowingly failed to comply with an order of his local draft board to report for and submit to induction into the Armed Forces. Defendant has pleaded not guilty.

The matter is before the Court for a pretrial determination whether the classification of defendant as I–A by the Local Board No. 4 was without any basis

in fact to support it. The Government concedes that if no basis in fact existed, this is a valid defense to the present charge, Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, and United States v. Stiles, 169 F.2d 455 (3rd Cir. 1948),[1] provided that the defendant exhausted all of his administrative remedies before bringing this action.[2] The parties agree that documents 1 through 8 constitute the Selective Service record upon which the Board acted when it classified defendant I–A.[3]

Defendant was born November 17, 1940. He registered with Local Board No. 4 on December 4, 1958. On November 20, 1961, he returned to the Board his completed Classification Questionnaire (SSS Form No. 100) (document No. 1). The only facts reported thereon which might have entitled him to a classification other than I–A were stated in Series VIII—Family Status and Dependents. There defendant stated that he had been married on June 19, 1960, was living with his wife, and had one child under the age of eighteen years living with him in his home (document No. 1, p. 3). On the same date, November 20, 1961, the Board requested defendant to furnish it with evidence to support his family status. In response he furnished the Board with proof of marriage, proof of the birth of the child, and proof that he was maintaining a bona fide family relationship with his child (documents Nos. 3 & 4). After receiving this evidence, the Board, on December 8, 1961, classified the defendant I–A.

On August 30, 1962 a Current Information Questionnaire (SSS Form No. 127) was mailed to defendant, completed by him, and returned to the Board on September 4, 1962 (document No. 5). The information furnished by defendant

about his family status was a repetition of what he had previously stated in the Classification Questionnaire (document No. 1). Nonetheless, the Local Board, on September 14, 1962, reclassified defendant III–A.[4] Later, on January 6, 1967, after plaintiff had reached 26 years of age, the Board classified him I–A The validity of this action is here in question.

Defendant makes two contentions: (1) because of his marital and parental situation, as shown by the file of the Board on January 6, 1967, he was erroneously reclassified I–A on that date, and (2) because defendant was then 26 years of age, he was statutorily ineligible for compulsory military service.

The file in the Board's office discloses that on August 16, 1965, the Board mailed defendant a Current Information Questionnaire (SSS Form No. 127) requesting, among other things, information as to his family status.

Hearing nothing from defendant, the Board sent him a card on September 23, 1965 which read:

"Please return Current Information Questionnaire mailed to you on August 16, 1965. It is important to your continued deferment from the draft."

This card was returned to the Board by the Post Office with the notation "addressee unknown".[5] On June 29, 1966, the Board mailed defendant another Current Information Questionnaire requesting the same information as did that which had been sent on August 16, 1965.

Nothing in the Board's file shows that the information sought on August 16, 1965 and June 29, 1966 was supplied by the defendant. Nor does it show whether defendant did or did not receive the Questionnaire which was mailed on June 29, 1966 (document No. 1, p. 8).

---

1. Government Brief filed January 26, 1968 at 6.

2. Memorandum of Matters Agreed to at Pre-trial Conference Held on February 29, 1968.

3. Stipulation and Order dated March 15, 1968.

4. Any error in his original I–A classification was thereby cured and is of no present significance.

5. This card was sent to the last address of defendant revealed in the Board's files. See Current Information Questionnaire received by the Board on September 4, 1962 (document No. 5).

The Government, therefore, argues that the requested information was necessary for a continuation of defendant's deferred status, and that his failure to provide it justified the Board in reclassifying him I–A on January 6, 1967.

On January 6, 1967, Selective Service Regulation 32 C.F.R. § 1622.30(a) (1967),[6] so far as relevant, read:

"In Class III–A shall be placed any registrant who has a child or children with whom he maintains a bona fide family relationship in their home * * * "

Under this regulation defendant was legally entitled to a III–A classification by virtue of information in the Board's file, unless, as the Government contends, his failure to provide the information which it requested on the Current Information Questionnaires of August 16, 1965, and June 29, 1966, justified the Board in reclassifying him I–A on January 6, 1967.

■ Admittedly, the burden is on the defendant to establish his eligibility for deferment. United States v. Porter, 314 F.2d 833 (7th Cir. 1963). The defendant had fully satisfied this burden on September 14, 1962, when he was classified III–A. It may be assumed that this burden continued until he was reclassified as I–A on January 6, 1967. The question remains whether he satisfied that burden by the information which he had theretofore given the Board, thereby placing the burden on the Board to go forward to show that the status of defendant on September 14, 1962, had so changed in the ensuing five years as to warrant his reclassification as I–A on January 6, 1967. The answer to this question requires a consideration of the

Regulations enacted pursuant to the Universal Military Training and Service Act.[7]

Part 1625 of the Regulations is entitled "Reopening and Considering Anew Registrant's Classification". 32 C.F.R. § 1625.1(a) states that no classification shall be permanent. Paragraph (b) requires the registrant to report in writing within 10 days, any change in his marital or dependency status which might result in his being placed in a different classification.[8] Paragraph (c) requires a Local Board to keep informed of the status of classified registrants, and authorizes the Board to question them and otherwise to keep currently informed of their status. Section 1625.2 authorizes a Local Board to reopen upon its own motion and consider anew the classification of a registrant,

"if such action is based upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification * * *."

This limits the authority of a Board to reopen and reconsider a prior classification only if *"facts"* not considered in connection with the prior classification exist which, if true, would justify changing it. Here the Board had before it no facts about the defendant's status that were at variance with those upon which it had previously based its III–A classification. The reopening and reconsideration of defendant's III–A classification, therefore, was not authorized by 32 C.F.R. § 1625.2.

■ The Board could not reconsider defendant's classification unless it complied with the regulations of Part 1625. It went beyond the limited jurisdiction

---

6. Enacted pursuant to 50 U.S.C.App. § 456(h) (1964) which, at all relevant times, read:

"The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces or training in the National Security Training Corps of any or all categories of persons who have

children, or wives and children, with whom they maintain a bona fide family relationship in their homes."

7. Now known as "Military Selective Service Act of 1967", Pub.L. 90–40, § 1(1), June 30, 1967, 81 Stat. 100.

8. There is no such written report from defendant in the Board's file.

conferred upon it by 32 C.F.R. § 1625.1 (a). In Estep v. United States, supra at 121, 66 S.Ct. at 427, the Court said:

"We cannot believe the Congress intended that criminal sanctions were to be applied to orders issued by local boards no matter how flagrantly they violated the rules and regulations which define their jurisdiction."

Other sections of the Regulations likewise support the conclusion that the I–A classification was invalid. Part 1622 relates to "Classification Rules and Principles". Section 1622.1(c) provides:

"The mailing by the local board of a Classification Questionnaire (SSS Form No. 100) to the latest address furnished by a registrant shall be notice to the registrant that unless information is presented to the local board, within the time specified for the return of the questionnaire, which will justify his deferment or exemption from military service the registrant will be classified in Class I–A."

Thus, while 32 C.F.R. § 1622.1(c) provides that the mailing of the Classification Questionnaire (SSS Form No. 100) to the registrant shall be notice to him that unless information is presented to the Local Board as required by that Questionnaire he will be classified as I–A, it fails to state that the failure of a registrant to answer a Current Information Questionnaire (SSS Form No. 127) will have the same consequence. The implication is that it shall not.

It probably would be desirable for a Local Board to have authority to classify as I–A a registrant who failed to respond to a Current Information Questionnaire (SSS Form No. 127). Otherwise, as the Government argues, a registrant can qualify for a deferred classification and then, if later the basis for his deferment ceases, retain the deferred classification merely by failing to fill out and return the Current Information Questionnaire. But if a Board is to have such authority

it should be given to it by the Regulations and not by a judicial decision which is in conflict with them as now written.

██ From what has been said it follows that defendant has carried the burden of showing that he was entitled on January 6, 1967, to a continuation of the III–A classification which had been given him on September 14, 1962. This conclusion makes it unnecessary to consider the second point pressed by defendant, namely, whether defendant was statutorily ineligible for service since he was over 26 when he was given I–A status.

The parties are directed to meet with the Court to determine the procedure to be followed in deciding whether an exhaustion of administrative remedies must be shown by defendant before he can secure relief from his I–A classification, and if so, how the factual issue of exhaustion is to be resolved.

Supplemental Opinion

*Preliminary Statement*

On December 26, 1967, defendant applied for a pretrial conference to determine whether, in defending the charge that he had violated 50 U.S.C.App. § 462 (1964) by failing to report for and submit to induction into the Armed Forces, he could properly claim that the order of induction was invalid, on the ground, among others, that no basis in fact existed for the I–A classification upon which the order of induction was predicated. The Government agreed that if no basis in fact for the defendant's classification existed, this could be asserted as a defense if, but only if, the defendant had exhausted all of his administrative appellate remedies.[1]

It was later agreed that the Court should first determine whether there was a basis in fact for defendant's I–A classification.[2] In defendants brief directed to this question he argued, as one of his points, that on January 6, 1967, when he

---

[1]. See, Memorandum of Matters Agreed to at Pre-Trial Conference Held on February 29, 1968.

[2]. See, Memorandum of Matters Agreed to at Pre-Trial Conference Held on March 27, 1968.

was classified I–A, he had passed the age of 26 years, and that this made him statutorily ineligible for service. The Court held, in its opinion dated May 13, 1968, that it was unnecessary to reach this point since, apart from the age question, on the record before the Board on January 6, 1967, there was no basis in fact for the Board classifying defendant I–A.

By opinion dated June 3, 1968, the Court held the general rule to be that unless an administrative appeal were taken from an unjustified classification—it was stipulated that defendant had taken no appeal from his I–A classification—the "no basis in fact" defense could not be asserted in a criminal action such as the present one. The Court stated, however, that a defendant might assert the "no basis in fact" defense if he could show that equitable considerations had prevented him from seeking administrative appellate relief.

On June 13, 1968, after hearing testimony, the Court held in an oral opinion that no equitable considerations justified the defendant in not appealing his I–A classification, and hence the "no basis in fact" defense could not be properly asserted as a defense. Inadvertently, the Court overlooked that it had failed to resolve the question whether defendant's being over twenty-six years of age at the time of his I–A classification rendered him ineligible for service. This question must now be examined.

### The Merits of the Question

■ 50 U.S.C.App. § 454 (1964) deals with persons liable for training and service. At all relevant times paragraph (a) provided:

"Except as otherwise provided in this title [sections 451, 453, 454, 455, 456 and 458–471 of this Appendix], every male citizen of the United States * * * who is between the ages of 18 years and 6 months and 26 years, at the time fixed for his registration * * * or *who is otherwise liable*

*as provided in section 6(h) of this title [section 456(h) of this Appendix]*, shall be liable for training and service in the Armed Forces of the United States;

\* \* \* \* \* \*

No person, without his consent, shall be inducted for training and service in the Armed Forces or for training in the National Security Training Corps under this title [sections 451, 453, 454, 455, 456 and 458–471], *except as otherwise provided herein,* after he has attained the twenty-sixth anniversary of the day of his birth." [3]

These provisions make clear that since defendant had passed his twenty-sixth birthday when the induction order was issued, the order was nugatory unless defendant was "liable as provided in section 6(h) of this title [section 456(h) of this Appendix]". The critical question, therefore, is whether section 456 (h) as it existed on January 6, 1967, extended defendant's liability for military service to age thirty-five.

Insofar as relevant, on January 6, 1967, section 456(h) provided:

"Except as otherwise provided in this subsection the President is authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training and service in the Armed Forces or from training in the National Security Training Corps of any or all categories of persons whose employment in industry, agriculture, or other occupations or employment, or whose continued service in an Office (other than an Office described in subsection (f)) under the United States or any State, Territory, or possession, or the District of Columbia, or whose activity in study, research, or medical, dental, veterinary, optometric, osteopathic, scientific, pharmaceutical, chiropractic, chiropodial, or other endeavors is found to be necessary to the maintenance of the national health, safety, or interest: *Provided,*

---

3. Italics supplied unless otherwise indicated.

That no person within any such category shall be deferred except upon the basis of his individual status: *Provided further, That persons who are or may be deferred under the provisions of this section shall remain liable for training and service in the Armed Forces or for training in the National Security Training Corps under the provisions of section 4(a) of this Act [section 454(a) of this Appendix] until the thirty-fifth anniversary of the date of their birth.* This proviso shall not be construed to prevent the continued deferment of such persons if otherwise deferable under any other provisions of this Act \* \* \* The President is also authorized, under such rules and regulations as he may prescribe, to provide for the deferment from training, and service in the Armed Forces or training in the National Security Training Corps of any or all categories of persons who have children, or wives and children, with whom they maintain bona fide family relationship in their homes. No deferment from such training and service in the Armed Forces or training in the National Security Training Corps shall be made in the case of any individual except upon the basis of the status of such individual."

It is defendant's contention that the *"And provided further"* clause is applicable only to the group of persons described in the sentence to which it is appended, *i. e.*, persons in various types of activities necessary to the maintenance of the national health, safety or interest. Defendant points out that he does not come within this group, and that his III–A deferment prior to his I–A classification on January 6, 1967 was based upon his having a wife and child with

whom he maintained a bona fide family relationship in their home. This is authorized by the last sentence above quoted in paragraph (h).[4] This deferment, unlike the first sentence in paragraph (h), is subject to no proviso extending the draft age beyond twenty-six years. This structural arrangement of paragraph (h) lends some force to defendant's argument that authority to call up for military duty persons between twenty-six and thirty-five is restricted to those persons engaged in activities necessary to the maintenance of the national health, safety or interest.

But countervailing arguments are more persuasive. The *"And provided further"* clause extending liability for service to thirty-five years of age was written into the statute by the Act of June 19, 1951, ch. 144, Title I, § 1 (*l*–q), 65 Stat. 83.[5] The Conference Report which preceded the enactment of this proviso stated:

"Persons now or hereafter deferred from induction will remain liable for induction into the Armed Forces or the National Security Training Corps until they attain the age of 35." 1951 U.S.Code Congressional and Administrative Service 1513–1514.

The breadth of this language indicates that Congress intended by the proviso to make *all* persons liable for service until age thirty-five who were or would be deferred from induction.[6] The language of the proviso itself likewise supports this conclusion. It states that "persons", without limitation, deferred under *"this section"* shall be subject to military service until age thirty-five. The only "section" referred to is section 456. By the express terms of the proviso all persons deferred under section 456 are, without exception, made liable for service until age thirty-five.

4. See also, 32 C.F.R. § 1622.30 for the applicable regulations.

5. For a legislative history of the 1951 amendment of section 6(h) of the Act, see Kaline v. United States, 235 F.2d 54, 63 (9th Cir. 1956).

6. Compare the earlier House Report which, in referring to the same language of the bill extending draft liability to thirty-five years, related it specifically to persons who continued their education or their employment in an essential industry past their twenty-sixth birthday. See, 1951 U.S. Code Congressional and Administrative Service, p. 1500.

Nor does there appear to be any good reason why Congress should have intended to subject to military service until age thirty-five persons engaged in activities necessary to the health, safety or national interest, when their deferment status changed, and to relieve from such service persons in other deferred categories, such as defendant, once their deferred status was lost.

Administratively, also, the limited interpretation which defendant would put upon paragraph (h) has been rejected. After Congress amended the statute to include the provisions now under scrutiny, the regulations were immediately amended in a manner consistent with the Government's interpretation of it.

On September 28, 1951, 32 C.F.R. § 1622.1(a) was promulgated by Exec. Order 10292, 16 F.R. 9862. It read, in relevant part:

> "[P]ersons who on June 19, 1951, were, or thereafter are, deferred under the provisions of section 6[i. e. § 456] of such act shall remain liable for training and service until they attain the age of 35."

This regulation extended liability for military service to age thirty-five for all persons then or thereafter deferred under section 456, without exception.[7] Section 456 includes categories of persons entitled to deferment other than persons engaged in activities contributing to the national health, safety or interest.[8] Thus, 32 C.F.R. § 1622.1(a) recognizes that the *"And provided further"* clause in paragraph (h) of section 456 which extends liability for military service to age thirty-five is not limited to persons performing services relating to national health, safety or interest.

■■ The administrative interpretation of the Act is entitled to substantial weight in construing it, especially since that construction is consistent with its literal terms, its legislative history, and is essentially reasonable. This is especially true since Congress has never seen fit to disturb that interpretation despite its opportunity to do so in its subsequent amendments to the statute.[9] Certainly, the Congress may change or supplement a regulation. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (U.S. May 27, 1968).

■ It follows from what has been said that the mere fact that defendant was reclassified from III-A to I-A after his twenty-sixth birthday does not invalidate his induction order. This conclusion is supported by the cases which have considered the problem. United States ex rel. Stark v. Howlett, 114 F. Supp. 880 (S.D.N.Y. 1953); Ex parte Alford, 121 F. Supp. 139 (S.D.Texas 1954).

### Supplemental Opinion

Defendant was indicted under 50 U.S.C. App. § 462 for failing to report and submit to induction on August 8, 1967. By agreement of the parties, the Court has tried the issue of whether the defendant prior to his indictment was denied substantive or procedural due process.

The order of Local Board No. 4 that defendant report for induction on August 8, 1967 was given to the defendant orally at the Board's office. That order pur-

---

7. Later amendments to the regulation have made no change in section 1622.1(a) relevant to the present case. On January 6, 1967 when Brown was reclassified I-A section 1622.1(a) read,

 "[P]ersons who on June 19, 1951, or thereafter were deferred under the provisions of section 6(c) (2) (A) of such Act that were in effect prior to September 3, 1963, shall remain liable for training and service until they attain the age of 28, and that persons who on June 19, 1951, were, or thereafter

are, deferred under any other provision of section 6 of such Act shall remain liable for training and service until they attain the age of 35."

8. For other deferments see: section 456 (c), (d), (e), (f), (h) and (i).

9. Section 456 was amended eight times between the 1951 enactment and January 6, 1967. See, 50 U.S.C.A.App. § 456 (1967 Cumulative Annual Pocket Part) 116.

ported to be given under the second sentence 32 C.F.R. § 1632.14(a) which reads in part:

"When the local board mails to a registrant an Order to Report for Induction (SSS Form No. 252) or an Order for Transferred Man to Report for Induction (SSS Form No. 253), it shall be the duty of the registrant to report for induction at the time and place fixed in such order. If the time when the registrant is ordered to report for induction is postponed, it shall be the continuing duty of the registrant to report for induction upon the termination of such postponement and he shall report for induction at such time and place as may be fixed by the local board."

The second sentence of section 1632.14(a) had efficacy only if previously an Order to Report for Induction (SSS Form No. 252) had been mailed to defendant pursuant to the first sentence of the section. Such an order had been mailed to defendant directing him to report for induction on July 6, 1967. Defendant has challenged the validity of this Order to Report for Induction. If it were invalid, as defendant claims, then the oral direction to defendant to report on August 8, 1967 is without foundation to support it and cannot stand.

The attack of defendant upon the Order to Report for Induction on July 6, 1967, is based upon the alleged failure of the Local Board to give the defendant the ten days notice demanded by section 1632.1. This reads in part:

"The date specified for reporting for induction shall be at least 10 days after the date on which the Order to Report for Induction (SSS Form No. 252) is mailed."

This sentence is amplified by section 1641.6 which reads:

"The period of days allowed a registrant or other person to perform any act or duty required of him shall be counted as beginning on the day following that on which the notice to him is posted or mailed."

 The evidence is in conflict whether the notice to report on July 6, 1967, was mailed on June 26, 1967, as the Government contends, or on June 28, 1967, as the defendant asserts. The envelope which contained the notice to report is postmarked June 28, 1967. After hearing and evaluating the evidence the Court is satisfied that June 28, 1967, should be accepted as the date of mailing. This means that only nine days notice to report for induction on July 6, 1967, was given to defendant, and the Order to Report for Induction on that date was invalid. It follows from this that the oral notice given to defendant to report on August 8, 1967, was likewise invalid. In Olvera v. United States, 223 F.2d 880, 882 (5th Cir. 1955) the Court said:

"* * * [I]t is of the essence of the validity of board orders and of the crime of disobeying them that all procedural requirements be strictly and faithfully followed, and that a showing of failure to follow them with such strictness and fidelity will invalidate the order of the board and a conviction based thereon."

Whether the lack of effective notice to defendant to report and submit to induction is deemed procedural or substantive makes little difference. In either event the indictment will be quashed.