Maarten Crijns deROZARIO, Appellant,

v.

COMMANDING OFFICER, ARMED FORCES EXAMINING AND INDUCTION STATION and Secretary of Defense, Appellees.

No. 21623.

United States Court of Appeals Ninth Circuit.

Dec. 21, 1967.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Herbert M. Schoenberg (argued), Asst. U. S. Atty., William Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, Los Angeles, Cal., for appellees.

Before BARNES and MERRILL, Circuit Judges, and SOLOMON,* District Judge.

BARNES, Circuit Judge:

This is an appeal from an order of the District Court for the Central District of California, denying appellant's petition for a writ of habeas corpus. The district court entertained the petition under 28 U.S.C. § 2241 (1964). This court has jurisdiction pursuant to 28 U.S.C. § 2253 (1964).

On August 9, 1966, a petition for a writ of habeas corpus was filed on behalf of the appellant Maarten Crijns deRozario, alleging that he was unlawfully "detained and restrained of his liberty" by the commanding officer of the Armed Forces Examining and Induction Station, 1033 South Broadway, Los Angeles, California, and by the Secretary of the Defense of the United States. C.T. 2–6. The ground upon which the petition was urged was that the appellant had arbitrarily and illegally been classified I–A (available for military service) by his local draft board, Local Board No. 116, Los Angles County; it was alleged that he should properly have been classified III–A pursuant to 32 C.F.R. § 1622.30 (b) (1967), which grants that classification's limited deferment to

"any registrant whose induction into the armed forces would result in extreme hardship (1) to his * * * parent * * * who is dependent upon him for support * * *."

The district court, after issuing an order to show cause, and an order restraining the respondents from moving deRozario out of the jurisdiction of that court, heard the case and denied the petition on its merits. It is from this order that deRozario appeals.

There are few, if any, facts in dispute in this case. Appellant, who was born in Indonesia, entered the United States on a permanent resident visa in 1962. In February 1963, after registering with Local Board No. 116 under applicable Selective Service regulations, he completed a Selective Service System Classification Questionnaire, which showed that he lived with his mother and one of his two brothers in Inglewood, California. Appellant also stated therein that he was a full-time student at a beauty school and that in the future he intended to be the "main supporter" of his mother, who was receiving a "small income" from Holland. Ex. A, 3–8. After considering the questionnaire, the local board classified appellant I–A. Ex. A, 10.

* Hon. Gus J. Solomon, Chief Judge, United States District Court, Portland, Oregon, sitting by designation.

On September 2, 1963, appellant wrote to the board, emphasizing that his mother was unable to speak English, Ex. A, 90–91, and the board granted him an October interview. At the interview he stated that the pension received by his mother, a widow sixty-two years of age, amounted to ninety dollars per month, and that he was her sole means of support; his two older brothers, both married, contributed nothing. After the meeting the board reclassified appellant III–A for the following year. Ex. A, 86–87. Meanwhile, appellant had already reported for an armed forces physical examination, and had been found physically acceptable for service. Ex. A, 93.

On November 9, 1964, appellant was reclassified I–A. Ex. A, 10. He immediately wrote to the board and requested an extension of his III–A deferment on the basis of unchanged circumstances. Ex. A, 76. The board then mailed appellant a Dependency Questionnaire, which he completed and returned. The questionnaire revealed that one of appellant's two brothers lived in the same block in Inglewood as appellant and his mother, but was reportedly unable to contribute to the mother's support. The financial capacity of the other brother, whose home was in Denver, was listed as "unknown." In response, the board again reclassified appellant III–A, this time for the period ending in January 1966. Ex. A, 10, 77–79.

In February 1966 appellant completed another Dependency Questionnaire, providing essentially the same information that he had supplied previously. On March 4, 1966, however, the board reclassified him I–A, Ex. A, 2a, 73–75.

Appellant then requested, and was granted, a personal appearance before the board to discuss his reclassification. On April 1, 1966, he appeared and, stating that his primary concern was not financial in nature, again emphasized his mother's difficulty with the English language. The board nonetheless declined to reclassify him III–A. Ex. A, 69.

By letter dated April 14, 1966, appellant then requested that the Selective Service Appeal Board review his local board's determination. In the letter he summarized his position, noting that his mother was unable to drive an automobile. He recognized, however, that her ninety dollar per month pension would be supplemented by a government allowance if he were drafted. On June 16, 1966, the Appeal Board unanimously upheld his I–A classification. Ex. A, 66–67, 99. And on July 8, 1966, the local board again decided that no change of classification was called for. Ex. A, 64.

Pursuant to an order dated July 20, 1966, appellant reported for induction on August 9 of that year. His own affidavit reveals that he was again examined and found qualified for service, but that before the induction ceremony he was taken aside and sent home; the Commanding Officer of the Armed Forces Entrance and Examination Station had that morning been served with the Order to Show Cause and Restraining Order issued by the District Court for the Southern District of California, hereinabove mentioned, enjoining him from moving appellant out of the jurisdiction of the district court until a hearing could be held on the petition for habeas corpus which had earlier that day been filed on appellant's behalf. C.T. 7–8.

Following the hearing, the district court on October 13, 1966, entered an order denying the petition on the ground that the board had not acted arbitrarily in failing to classify appellant III–A. The order notes the existence of appellant's two brothers, and concludes that he "was given ample time in which to solve his problem." C.T. 31. It is from this order that deRozario appeals, claiming that the local board's decision to classify him I–A, was "arbitrary, capricious, without basis in fact and contrary to law."

■ We hold that the denial of habeas corpus should be affirmed. It is questionable, in fact, whether we need even reach the substantive issue—the propriety of the local board's classfication of appellant—which was determined by the

district court; for it appears that habeas corpus was prematurely sought.

The writ of habeas corpus is available to a petitioner in deRozario's position only if he is "in custody," either under or by color of the authority of the United States or in violation of its laws. 28 U.S.C. § 2241(c) (1), (3) (1964). Since its inception, in fact, the writ has been available only to test the validity of detention. See McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). The traditional contours of the notion of "custody" in a context such as that presented here were set out by the Supreme Court in Wales v. Whitney, 114 U.S. 564, 572, 5 S.Ct. 1050, 29 L.Ed. 277 (1885), in which the Court stated,

> "There must be actual confinement or the present means of enforcing it. The class of cases in which a sheriff or other officer, with a writ in his hands for the arrest of a person whom he is required to take into custody, to whom the person to be arrested submits without force being applied, comes under this definition. The officer has the authority to arrest and the power to enforce it. * * * Here the force is imminent and the party is in the presence of it. * * *

> "It is said in argument that such is the power exercised over the appellant under the order of the secretary of the navy [proclaiming him 'under arrest' and ordering him confined to the city of Washington]. But this is, we think, a mistake. If Dr. Wales had chosen to disobey this order, he had nothing to do but take the next or any subsequent train away from the city and leave it.

* * * And though it is said that a file of marines or some proper officer could have been sent to arrest and bring him back, this could only be done by another order of the secretary, and would be another arrest, and a real imprisonment under another and distinct order. Here would be a real restraint of liberty, quite different from the first. The fear of this latter proceeding, which may or may not keep Dr. Wales within the limits of the city, is a moral restraint which concerns his own convenience, and in regard to which he exercises his own will."

We believe the record here fails to show that appellant was, in accordance with this long-recognized principle,[1] in the custody of the appellees. In Billings v. Truesdell, 321 U.S. 542, 559, 64 S.Ct. 737, 746, 88 L.Ed. 917 (1944), the Supreme Court held that the demarcation line between civilian and military jurisdiction in induction cases turns, in the language of 50 App.U.S.C. § 462(a) (1964), on whether the individual concerned has been "actually inducted."

And, continued the Court, a selectee

> "becomes 'actually inducted' within the meaning of * * * the [1940 Selective Training and Service Act, predecessor of the Universal Military Training and Service Act] when in obedience to the order of his board and after the Army has found him acceptable for service he undergoes whatever ceremony or requirements of admission the War Department has prescribed."

Here, appellant had not taken the final step toward induction—the ceremony specified in Army Regulation 601–270, ¶

---

1. The requirements illustrated by the *Wales* decision have been modified to some degree in a special class of cases involving circumstances such as parole. See Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Martin v. Commonwealth of Virginia, 349 F.2d 781 (4th Cir. 1965). There is no sound argument, however, for extending such exceptions to cover situations such as that presented here. It would be a harsh rule which required that a parolee must, in order to test the validity of the restrictions on his liberty, violate the conditions of his parole and voluntarily allow himself to be once more imprisoned. A similar sort of unfairness likewise may be thought to inhere in a rule under which a prisoner could not challenge a conviction which prevented his eligibility for parole. Here, however, particularly since the detention of which he complains exists only after he is in fact inducted into the armed forces, it hardly seems burdensome to require that appellant submit to induction in order to test the validity of that detention.

37. He was not physically detained by appellees, nor was he subject to military jurisdiction. He could have left the induction center had he so chosen, and would presumably have been subject only to civil (nonmilitary) prosecution. In such circumstances the authorities seem clear that habeas corpus is not available. See Lynch v. Hershey, 93 U.S.App.D.C. 177, 208 F.2d 523 (1953) (per curiam), cert. denied, 347 U.S. 917, 74 S.Ct. 515, 98 L.Ed. 1072 (1954); United States ex rel. Lauritsen v. Allen, 154 F.2d 959 (8th Cir. 1946); Biron v. Collins, 145 F.2d 758 (5th Cir. 1944); Enge v. Clark, 144 F.2d 638 (9th Cir. 1944); Berman v. Clark, 144 F.2d 640 (9th Cir. 1944); In re Herman, 56 F.Supp. 733 (N.D.Tex. 1944); H. R. Rep. No. 36, 79th Cong., 1st Sess. 4–5 (1945). But see Ex parte Fabiani, 105 F.Supp. 139 (E.D.Pa.1952).

■ Under the peculiar circumstances of this case, however, we do not choose to rest our decision solely on that ground. The issue involved in the above discussion was, first of all, not briefed by the parties. (It was, however, raised by government counsel in the district court.) Furthermore, the government's brief asserts—although the record is silent concerning the matter—that appellant has since the district court's hearing been inducted into the Army; appellant has not challenged the assertion. On oral argument, in fact, both counsel admitted the appellant's induction. It seems likely, then, that an affirmance based on the ground that habeas corpus was prematurely sought would merely postpone consideration of the substantive issue raised by the appellant. That issue has been briefed in full by counsel; and its disposition seems to us reasonably clear. In these circumstances we believe we are justified in the interest of judicial economy in considering it.

■ Appellant asks this court to review the decision of his local board in classifying him I–A rather than III–A; that action is, he claims, erroneous. 50 App.U.S.C. § 460(b) (3) (1964) however, makes decisions of Selective Service boards with respect to classifications "fi-nal." And although that language has not been held to exclude judicial review altogether, the review it leaves open— while perhaps not susceptible to precise definition—has been described by this court as the "narrowest known to law." Keefer v. United States, 313 F.2d 773, 776 (9th Cir. 1963), quoting Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). We need not find "substantial evidence" (the usual standard for judicial review of administrative action) supporting the board's determination; rather, that determination may be overturned only if it has "no basis in fact." Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ We turn to the record in the present case. First, the mere fact that the board reclassified appellant from III–A to I–A clearly does not compel a finding that the latter classification has no "basis in fact." See 32 C.F.R. § 1625.1 (1967) ("No classification is permanent."); United States v. Domres, 142 F.2d 477 (7th Cir.), cert. denied, 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581 (1944). An administrative ruling does not irrevocably commit the agency to the position thus taken. Even under a "substantial evidence" test it is perfectly conceivable that, while substantial evidence might support a III–A classification, a I–A classification is also adequately supported. The decision is for the local board, not for this court. And, of course, it is always possible that an agency which reverses its ground is correct in its second, rather than its first, decision. Furthermore, it is not clear that the circumstances here did not change so as to justify a reclassification. The board might within the limits of its broad discretion have taken the position that appellant failed to take advantage, as time passed, of the opportunity to teach his mother English, to assist her in learning to drive, or to solicit information from his brother in Denver regarding the latter's ability to support his mother. We may also take judicial

notice of the steadily increasing size of national draft quotas during the period here in question. The mere fact that the board changed its classification is, then, not at all determinative; the only question is whether the classification ultimately made has a "basis in fact."

We conclude that it does. The Tenth Circuit has recently so held in quite similar circumstances:

"The hardship-dependency classification applies only to those persons 'whose induction into the armed forces would result in extreme hardship * * *.' 32 C.F.R. 1622.30(b). A selective service registrant claiming such an exemption has the burden of clearing establishing his right thereto. * * * The Dependency Questionnaire showed that Carlson had adult brothers and a sister. He declined to complete that section of the questionnaire which would have reflected his financial condition. He tendered no statements or affidavits from other individuals in support of his request. In these circumstances, we cannot say that the Local Board's refusal to reclassify Carlson had no basis in fact or that its disposition of the case was procedurally arbitrary." Carlson v. United States, 364 F.2d 914, 916 (10th Cir. 1966).

So here, the existence of a ninety dollar per month pension to the mother from another government, the prospect of a similar monthly amount from the United States, appellant's increasing confidence concerning finances, the fact that one of his brothers lived in the immediate vicinity of his mother, and the existence of another brother whose resources appellant failed to specify—these factors, in combination, provide a "basis in fact" for the board's ruling.

The inability of appellant's mother to drive a car can hardly be regarded as determinative. The same is true of her lack of expertise in English—the board might, indeed, have inferred that over the course of four years in this country one would inevitably learn a certain amount of basic English.

In short, the question is one of allocation of responsibility. Congress has given local draft boards the responsibility of classifying registrants. Our responsibility is not to make such classifications anew, but rather to decide whether there is a basis in fact for the boards' decisions. Here there exists such a basis.

The order of the district court is affirmed.