**Petition of Daniel S. BANK for a Writ of Habeas Corpus.**

**Civ. No. 49280.**

United States District Court
N. D. California.

Oct. 1, 1968.

James C. Purcell, San Francisco, Cal., Benjamin Dreyfus, San Francisco, Cal., for petitioner.

Cecil F. Poole, U. S. Atty., Jerry K. Cimmet, Asst. U. S. Atty., San Francisco, Cal., for respondents.

## MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION

GEORGE B. HARRIS, District Judge.

Daniel S. Bank filed a Petition for Habeas Corpus on May 20, 1968. On the same date an Order to Show Cause and Temporary Restraining Order were filed.

Petitioner alleged that he was unlawfully held in custody by respondent on the ground that he was improperly inducted into the armed forces on December 4, 1967. Petitioner alleged that he was, on December 4, 1967, not medically fit for induction. Petitioner further alleged that he was denied procedural due process by induction station personnel and that there was no basis in fact for his induction or for his retention by the Army. In support of the above allegations, a report of Dr. Richard Coopersmith, a psychiatrist, was attached to the Petition as Exhibit A.

Respondent filed a Return on Order to Show Cause, with Memorandum and Exhibits attached, on June 11, 1968. Respondent's exhibits to the return consisted of various medical reports, petitioner's selective service record, portions of petitioner's Army health records, and various pertinent regulations.

An evidentiary hearing was held on July 2, 1968, at which time petitioner was present in court and was represented by his attorneys, Benjamin Dreyfus, Esq. and James C. Purcell, Esq. Respondent was represented by Cecil F. Poole, United

States Attorney for the Northern District of California, by Jerry K. Cimmet, Assistant United States Attorney.

Dr. John F. Montague testified on behalf of the petitioner. Petitioner did not testify and no other witnesses were called by either party. Various documents were introduced into evidence, including a report of Dr. Montague dated October 16, 1967, petitioner's selective service file and petitioner's complete Army personnel and health records. Included in the latter was a report, dated June 25, 1968, of an Army Sanity Board, which Board consisted of three psychiatrists, convened to consider petitioner's claim.

After the evidentiary hearing, memoranda were filed by the parties and the case was argued and submitted.

Several contentions were fully and ably presented:

(a) Was the petitioner accorded procedural due process?

(b) Was there a basis in fact for the determination that petitioner was fit for induction in December, 1967?

■ In determining whether the petitioner should be released from active duty, this Court's review is limited to whether the Army had a basis in fact for its decision that petitioner was fit for induction in December, 1967. Briggs v. United States, 397 F.2d 370 (9th Cir., June 26, 1968); United States ex rel. Goldstein v. McNamara, 270 F.Supp. 892, 895 (E.D.Pa.1967).

The Court in deRozario v. Commanding Officer, Armed Forces Examining and Induction Station, 390 F.2d 532 (9th Cir. 1967), held that in reviewing the decisions of local draft board the Court need not find substantial evidence supporting the board's determination; rather, that the determination may be overturned only if it has no basis in fact. In support of this position the Court cited Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and Witmer v. United States, 348 U.S. 375, 381, 75 S.Ct. 392, 99 L. Ed. 428 (1955).

This same standard (i. e. "basis in fact") was found to be applicable to a decision by the Army where the question presented was whether the petitioner was being unlawfully detained in the Army. United States ex rel. Goldstein v. McNamara, supra.

■ Petitioner contends that Dr. Montague's report of October 16, 1967, was assertedly mailed to his local Board prior to induction and therefore should have been considered by the induction station personnel on December 4, 1967.

Further, that in view of the Montague report, petitioner should have been given a complete physical examination rather than a physical inspection on December 4, 1967. The record discloses that on the latter date Bank was given a physical inspection at the station, in accordance with existing regulations, since he had been given a complete physical examination in August 1967, less than six months prior to induction.

Respondent asserts that the selective service file does not contain Dr. Montague's report. That fact, coupled with the absence of any communication by petitioner, or anyone on his behalf, to either his local Board or the induction station as to any claim of medical disability, indicates that no notice was given or received which would require or justify a complete physical examination at the time of induction. Parenthetically, it should be observed that petitioner was being advised by an attorney and his mother during the period of time in question. It appears that he was in communication with his Board on October 19 and 27, 1967 and made no claim or assertion concerning any disability.

■ Respondent also contends that irrespective of whether the Montague report was received, petitioner was not prejudiced by the claimed lack of a complete examination in December, 1967, particularly, in view of the recent, extensive examinations conducted by the Army physicians on May 17, May 24 and June 24, 1968, and the proceedings held by the Army's Sanity Board, in the determination that Bank was fit for induc-

tion as of December 4, 1967. The Sanity Board's report, dated June 25, 1968, indicated that Bank was "an alert, well oriented soldier." The Board's report was essentially negative with respect to mental illness and the Board concluded that Bank was mentally competent, met retention standards, and was psychiatrically fit for duty at the time of induction and at the time of the examination.

Specifically, the Board found that Bank

" * * * was an alert, well oriented soldier who related in a relevant and coherent manner. He demonstrated an appropriate degree of emotional and affectual response. His mood was one of concern about his future, but there was no evidence of depression or other mood disturbance. He stated he felt he could remain in the service and perform adequately in a noncombatant position. There was no defect noted in his ability for abstract ideation. There was no evidence of hallucinations, delusions, ideas of reference, memory disturbance, paranoid ideation or any other sign of psychosis or difficulty in reality testing."

Psychological testing showed no evidence of a thought disorder or neurosis.

In reaching their conclusion the Board considered previous medical reports contained in Exhibit F, including those of Dr. Nagy, Dr. Keim and Dr. Quinn. The members of the board were psychiatrists and included Drs. Keim and Quinn, who had previously examined petitioner on May 17, 1968. As indicated by Dr. Quinn's entry of June 20, 1968, in Exhibit F, Drs. Quinn and Keim had reviewed the reports of Drs. Montague and Coopersmith and indicated the diagnosis of simple schizophrenic was not supported.

The Court finds and concludes:

(a) That petitioner was not denied procedural due process;

(b) That petitioner has, since induction, been thoroughly re-examined medically by competent Army personnel;

(c) The Army medical reports, the report of the Sanity Board, as well as petitioner's commendatory personnel and health records, including the several exhibits on file, provide abundant support with respect to the factual basis for the decision by the Army that petitioner was fit for induction on December 4, 1967, and is presently fit for retention;

(d) That the pertinent regulations which require a physical inspection at the time of induction, were regularly followed.

Accordingly, it is hereby ordred:

That the petition be, and it is hereby, denied, the Order to Show Cause discharged, the temporary restraining order dissolved, and the action dismissed.