Timothy Floyd LEWIS, Appellant,

v.

SECRETARY, DEPARTMENT OF THE ARMY, Appellee.

No. 21905.

United States Court of Appeals
Ninth Circuit.

Sept. 5, 1968.

Rehearing Denied Dec. 11, 1968.

J. B. Tietz (argued), Michael Hannon, Los Angeles, Cal., for appellant.

Carolyn M. Reynold (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Asst. U. S. Atty., for appellee.

Before CHAMBERS and JERTBERG, Circuit Judges, and WEIGEL,* District Judge.

* Honorable Stanley A. Weigel, United States District Judge for the Northern District of California, sitting by designation.

JERTBERG, Circuit Judge:

Appellant Lewis, on February 20, 1967, petitioned the District Court for a Writ of Habeas Corpus to order his release from the armed forces and prevent his removal from the jurisdiction of the Court. On the same day, the Court issued an Order to Show Cause. A Return to the Order to Show Cause and an Answer to the Petition for Writ of Habeas Corpus were filed on February 28, 1967. On that date, the present appellee was substituted for the original respondents. Later, supplemental pleadings were filed. After a hearing, the District Court, on April 13, 1967, denied appellant's petition. Appellant filed a timely appeal.

This Court has jurisdiction under 28 U.S.C. § 2253.

Appellant was born on September 15, 1942. He registered with the Selective Service System on September 26, 1960.

On August 1, 1962, appellant's Local Board mailed him a Classification Questionnaire and he executed and returned it. In the Questionnaire appellant stated that he lived with his widowed mother, age 60 years; that she was "partially" dependent upon him; that he contributed $600 per year to her; that her other income was $1800 per year; and that his two brothers (one of whom lived with appellant and his mother) were capable of contributing to his mother. He further stated that "Both my brothers are capable of contributing to the support of my mother. It was not my intention to infer that she is entirely dependent on me since this is not the case." Appellant was classified I-A on October 3, 1963.

On March 27, 1964, appellant appeared, as ordered, for physical examination. He was found temporarily not acceptable because of braces on his teeth, and was classified I-Y.

In the meantime, appellant received another Dependency Questionnaire. In it appellant stated that he contributed approximately $175.00 per month to the support of his mother, but that "this amount varies. For example, it is considerably more when taxes and insurance are due." He also stated that his mother's other income was $1560.00 per year. In regard to his brothers, appellant said that neither could now contribute to their mother's support. Appellant said that one brother "supports a wife and four children," and that the other brother (then living in Virginia) was "heavily burdened with debts." Both appellant and his mother remarked that his presence at home was necessary to its maintenance, and if she became ill, to her well-being. A doctor's letter said that appellant's mother was unable to work because of her physical condition.

On the basis of the Questionnaire, the Local Board classified appellant III-A (Registrant Deferred by Reason of Extreme Hardship to Dependent) on June 18, 1964, which status was subject to review within one year.

In June 1966, another Dependency Questionnaire was filled out by appellant wherein he stated that he contributed approximately $175.00 per month to his mother's support, and more "when property taxes, insurance, etc. comes due." He further stated that he had a gross annual income of $8500; that he lived with his mother in the family home and had monthly obligations in the amount of $400 for "Personal loan, groceries, taxes, doctor bills, utilities, gas, insurance, upkeep on home, etc." Appellant stated that his mother received $1188 a year from Social Security and $700 from dividends, and:

"with regard to my brothers, my oldest one lives in New York and supports a large family. My other brother lives here in Los Angeles and is married with one child (and another expected soon). He is heavily in debt and is presently unemployed. I have found it necessary to loan him over $200 in the past few weeks to help get him buy (sic) until he can find employment. Financially he is incapable of giving any support to my mother.

"My father, Floyd B. Lewis, passed away in Glendale, California on June

3, 1957 and I have worked first part time, and then (presently) full time to help maintain our home and support.

"My mother's income comes from Social Security and Dividends and the total of these two fall far short of what it takes to maintain our home. Property taxes, house insurance, and necessary repairs to her house would have taken over half her income in the past 12 months. What is of more concern to me is the fact that she is not in good health. (There is medical evidence of this in my Selective Service File in the form of a letter from our family doctor). She hasn't worked since 1927 and is completely unable to do so now. During the past several years she has been completely bedridden on one occasion. One illness lasted eight months during which I gave her constant care. The other was when she fell and broke her wrist, again requiring constant care on my part. As she has no one to depend on but myself, I feel that it is imperative to her health and well being that I remain in my present position and I therefore ask for a continuance of my present classification until the present circumstances change."

The mother furnished a statement, saying:

"Since the death of my husband several years ago, I have depended greatly on my son to maintain our home, both financially and otherwise. He helps pay the taxes, insurance, house repairs, etc. He also takes care of the yard work and other such things. During the past few years I have been ill on several occasions which have required him to do the housework, cooking, etc., as well as taking care of me. Since I have no one else to depend on for the support he gives me, I would be unable to get along without his help."

After receipt of the Dependency Questionnaire, the Local Board requested appellant to present himself for an interview in order to clarify the information in his file.

On July 14, 1966, he was interviewed by the Board. Appellant stated that his father died in 1957 and left $8500 of insurance which his mother used to pay bills, and invested the balance. He said that his mother received $700 per year from the investment. When asked how long he had supported his mother, he stated that his mother put him through high school and then he started to work full time. He also stated that his mother owned the home clear, and that it contained two bedrooms; that he had two brothers, one of whom was unemployed, and the other had a wife and four children. When asked why his two brothers left him with the burden of supporting his mother, he replied that he always assumed responsibility and that his older brother would have helped if he had to.

On July 14, 1966, the Board reclassified appellant I-A.

On July 21, 1966, appellant requested permission to examine his file.

On July 29, the Local Board received another letter from the doctor stating that appellant's mother was unable to work. On August 18, 1966, appellant appeared before the Board and stated that he couldn't understand why his classification was changed when the situation had not changed. The Board informed appellant that he was not in position to question the authority of the Local Board in determining classifications. He stated that he contributed $175 per month towards his mother's support and pays the property taxes of $418.00 a year.

The Board did not reclassify appellant from I-A but forwarded his file to the Appeal Board.

Appellant was ordered to report for physical examination on August 31, 1966, and was found acceptable for military service.

The Appeal Board reviewed appellant's file and on December 22, 1966, he was classified I-A by unanimous vote. Appellant was thereafter ordered to report for induction on February 20, 1967.

Appellant wrote to the Board requesting a review of his case and cancellation of the induction order on the ground that his "back condition" disqualified him for military service, and stated "I realize that I should have handled my case along these lines over and above my dependency claim but I was ill-advised (not by the Selective Service) on this matter."

The Board denied appellant's request for postponement of his induction or reopening of his classification, and on February 20, 1967, appellant was inducted into the United States Army. On that day appellant filed with the District Court his Petition for Writ of Habeas Corpus. As previously noted, the District Court, following a hearing, denied the petition.

The District Court in its Findings of Fact and Conclusions of Law, found and concluded:

"III

"The Petitioner's showing is insufficient to warrant this Court granting the writ of habeas corpus discharging Petitioner from the Armed Services of the United States.

"IV

"All procedural rights were accorded to Petitioner and he was not denied due process in his classification.

"V

"The Selective Service file shows that there is substantial evidence to support the classification."

On this appeal, appellant first contends that his classification from III-A to I-A was without basis in fact, capricious, arbitrary, and contrary to law. This contention is developed as follows:

Appellant was classified III-A on June 18, 1964, based upon the information then before the Board, which we have previously summarized. Appellant remained in this status for slightly more than two years, when he was directed by the Board to file another Dependency Questionnaire. Appellant did so and made a personal appearance before the

Board, both of which we have previously summarized.

On July 14, 1966, appellant was reclassified in I-A, based on the information supplied in the new Questionnaire, in the personal appearance, and in the prior record before the Board. The action of the Board in reclassifying appellant I-A was taken "without any evidence that appellant had misrepresented his case, and without any new evidence detracting from the merits of appellant's case, * * *," and that such action was without "basis in fact." In other words, appellant argues that the information before the Board at the time of his I-A classification established a prima facie case for a III-A classification.

Appellant relies on Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953). At page 396, 74 S.Ct. at page 157 the Court stated:

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. The court manifested its own skepticism by pointing to Dickinson's youth, the unorthodox method of ordination by baptism, the failure to present stronger documentary evidence from Watchtower Society leaders, and the customary claim of Jehovah's Witnesses to ministerial exemptions. However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the

ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' *However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption.* The local board may question a registrant under oath, subpoena witnesses to testify, and require both registrant and witnesses to produce documents. 32 C.F.R. § 1621.15. The board is authorized to obtain information from local, state, and national welfare and governmental agencies. 32 C.F.R. § 1621.14. The registrant's admissions, testimony of other witnesses, frequently unsolicited evidence from a registrant's neighbors, or information obtained from other agencies may produce dissidence which the boards are free to resolve. Absent such admissions or other evidence, the local boards may call on the investigative agencies of the federal government, as they would if a registrant were suspected of perjury. *But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice.*" [Emphasis added. Footnote omitted.]

■ 50 App. U.S.C. § 460(b) (3) (1964), makes decisions of Selective Service boards with respect to classifications "final." Our inquiry is limited to the question of whether there is a basis in fact for the Board's I-A classification. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955); deRozario v. Commanding Officer, Armed Forces Examining and Induction Station et al., 390 F.2d 532 (9th Cir. 1967).

■ We recognize that the mere fact that the Board reclassified appellant from III-A to I-A clearly does not compel a finding that the latter classification has no "basis in fact." See 32 C. F.R. § 1625.1 (1967). No classification is permanent. The only question is whether the classification ultimately made has a "basis in fact." See United States v. Domres, 142 F.2d 477 (7th Cir.), cert. denied 323 U.S. 723, 65 S. Ct. 55, 89 L.Ed. 581 (1944). See also deRozario v. Commanding Officer, etc., et al., supra.

■ Our task in this case is to determine from the record whether a "basis in fact" exists for the I-A classification, or, in the language of Dickinson, supra, 346 U.S. at page 396, 74 S.Ct. at page 157:

"* * * to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities."

■ Our review of the record discloses that the facts before the Board are not in dispute, and that there is no significant difference between the facts before the Board when it classified appellant in III-A in 1964 and when it reclassified him in I-A in 1966. In fact, we believe that the information before the Board in 1966 strengthens appellant's claim to a III-A classification. We are satisfied that appellant established before the Board a prima facie case for a III-A classification. We have been unable to find any proof in the record that is incompatible with appellant's claim to such classification.

The government contends that there is, in the record, a basis in fact for the I-A classification. Excerpts from the government's brief are:

"Certainly, the board could properly determine that the $175.00 per month contributed by the appellant was in the nature of a payment for room and board by appellant.

"In addition, appellant claimed that his two brothers were unable to contribute to the support of his mother.

However, appellant never submitted affidavits from his brothers establishing their inability to contribute anything but appears to base his opinion on the fact that one brother has a wife and four children, and the other brother has a pregnant wife and one child and is 'heavily in debt and presently unemployed.' Even assuming that appellant could establish that neither brother could aid the mother financially, it is noted that one brother lives in Los Angeles, the same city as appellant's mother, and there is no showing that this brother could not take care of some of the household repairs and otherwise assist the mother.

"Further, analyzing appellant's answers to the questionnaire, he states that the family home is clear and that the taxes, insurance and repairs 'would have taken over half her income in the past 12 month (sic).' Obviously, then, his mother is capable of financially sustaining herself. Even should the mother not be able to support herself from her annual income from social security and dividends, there is no showing by appellant that his mother could not mortgage the home in order to receive additional funds if it was necessary.

"* * *. Appellant makes no claim that his mother is unable to care for herself now but he bases his claim on the fact that in the past there were two occasions when he had to give her constant care. Certainly, the board is not required to find that appellant is needed at home because sometime in the future his mother may again require his care.

"Even the mother's statement in the file does not contain any facts which would lead the board to logically conclude that appellant's induction into the service would constitute an extreme hardship on her. She states that since her husband died several years ago, she has 'depended greatly on my son to maintain our home both financially and otherwise.' Certainly any widowed mother would depend upon a grown child who lived at home and contributed toward the maintenance and care of the home. But these are not 'facts' which establish extreme hardship.

"* * *. He [appellant] also stated that his mother put him through high school and then he started to work full time.

"Since appellant was born September 15, 1942, it can be assumed that he did not finish high school until 1960 or 1961. Accordingly, the mother would not have been receiving any support from him from the time of the father's death in 1957 until 1960 or 1961 and she managed to put appellant through high school during that time. Since the mother has not worked since 1927 and the appellant has not mentioned any other source of income for her, it is reasonable to assume that from the time the father died until appellant began to work, that she managed to maintain herself, a home, and to educate appellant without any outside financial assistance. "* * *.

"In the letter, [written after appellant was reclassified in I-A] appellant went on to restate his opinion that his mother was dependent upon him and reiterated the two occasions in the past when she was bedridden and needed his care. He also says that 'In order to increase her income to the extent necessary to totally support the financial end of the household plus other additional expenses such as medical attention, she would have to delve into the principal of her investment from which she now gets a small monthly return. This would substantially reduce the principal and subsequently reduce her monthly income.' Although it would be a shame if the mother had to 'delve into the principal of her investment' in order to maintain her home, surely this cannot be the type of 'extreme hardship' that is contemplated in order to entitle one to a dependency deferment under 32 C. F.R. § 1622.30(b)."

The record discloses that appellant's mother was age 64 at the time of the reclassification. Under date of March 16, 1964, her doctor advised the Board that:

"Mrs. Elizabeth Lewis is a widow and is unable to work. She has been a patient for many years and has a history of old fibro calcific disease both apices (pulmonary), menopause and vaso-motor instability."

Her total gross annual income was $1888.00 consisting of annual dividends in the amount of $700, and Social Security payments of $1188. From this amount she was required to pay property taxes of $418 a year, insurance premiums, utility bills, medical expenses, and care and maintenance of a thirty-five year old home, all of which approximated one-half of her total gross income, leaving approximately $900 a year, or $75 per month, for food, clothing and incidentals.

■ The government's suggestions that she might mortgage her home, or delve into her meager investment, do not supply convincing proof in the record that is incompatible with the prima facie case established by appellant.

■ Although the record shows that appellant worked "part time" following his father's death in 1957 until appellant completed high school in 1960 or 1961, the government's suggestion that the mother managed to put appellant through high school without financial assistance from appellant, does not establish that appellant's financial and other assistance was unnecessary for her support and maintenance after appellant started to work full time in 1960 or 1961. It is reasonable to infer from the record that appellant made some contribution to the support of his mother from the remuneration that he received from his "part time" work during the high school years. Furthermore, it is a matter of common knowledge that a mother will scrape and sacrifice, if necessary, in order that a son may complete his high school education.

■ The fact that appellant's mother was not bedridden at the time of the reclassification in July 1966 is not incompatible with appellant's proof before the Board that her age, and chronic condition of poor health were such that she required care and attention of another person even when not bedridden. In writing is the doctor's statement that the mother had been a long time patient of his and that she suffered from the infirmities set forth in his letter.

■ The fact that appellant never submitted affidavits from his brothers of their inability to financially contribute to the support of their mother does not impugn the proof submitted by appellant of their inability to do so. If the Board doubted the proof submitted, the Board could have, as stated in *Dickinson* supra, 346 U.S. at pages 396 and 397, 74 S.Ct. at 157:

"The local board may question a registrant under oath, subpoena witnesses to testify, and require both registrant and witnesses to produce documents. 32 C.F.R. § 1621.15. The board is authorized to obtain information from local, state, and national welfare and governmental agencies. 32 C.F.R. § 1621.14."

■ We do not believe, as suggested by the government, that the Board could properly determine from the record before it, that the $175.00 per month contributed by the appellant to his mother's support was in the nature of a payment by him for room and board. The relationship between appellant and his mother, as disclosed by the record, was not that of a lodge-keeper and a boarder, but on the other hand was that of a relationship between a mother and a son who was endeavoring to assist his mother in continuing to live in her own home.

Under the rationale of *Dickinson*, supra, we are unable to agree with the government that a basis in fact exists for appellant's I-A classification. In our view such classification is based on suspicion and speculation.

We deem it unnecessary to consider other alleged errors urged by appellant.

The order of the district court is reversed and the cause is remanded for such further proceedings as may be appropriate.