UNITED STATES of America,
Appellee,

v.

David Marshall PENCE, Appellant.

No. 19423.

United States Court of Appeals
Eighth Circuit.

May 1, 1969.

Douglas Hall, Minneapolis, Minn., for appellant.

J. Earl Cudd, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Patrick J. Foley, U. S. Atty., Minneapolis, Minn., with him on the brief.

Before GIBSON, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

David Marshall Pence appeals his conviction of failing "to comply with an order of his local board to report for and submit to induction into the armed forces of the United States * * *" in violation of 50 U.S.C.App. § 462. The grounds of appeal are two-fold: (1) that defendant's I-A classification (available for military service) was without basis in fact and (2) that defendant's reclassification from I-A-O (conscientious objector available for noncombatant military service only) to I-A was arbitrary and capricious and beyond the authority of the board. The district court in denying defendant's motion to dismiss held that defendant did not exhaust his administrative remedies and therefore could not challenge his classification. Alternatively, the trial court found that there existed a basis in fact for defendant's I-A classification. We reverse with directions to enter a verdict of acquittal.

The chronological background of the defendant's various Selective Service classifications can be summarized brief-

ly. He first registered with the Selective Service on November 16, 1964. At that time he did not claim to be a conscientious objector. On December 14, 1965, he was classified IV-D because of his attendance at a Roman Catholic seminary. On June 3, 1966, he discontinued his seminary studies and was reclassified I-A. On July 12, 1966, he was reclassified II-A because of enrollment in VISTA (Volunteers in Service to America) and spent one year in community work in Baltimore, Maryland and Bloomington, Delaware. On May 4, 1967, defendant requested to be classified as a conscientious objector. On the basis of his questionnaire his local board classified him I-A-O on August 9, 1967. Defendant was ordered to report for a physical examination on September 25, 1967. He refused to report. Defendant's refusal to undergo medical processing for his physical was reported to the State Selective Service Board. On September 28, 1967, the State Deputy Director of Selective Service recommended that on review of defendant's file he should be classified I-O rather than I-A-O and directed the local board to reopen defendant's classification. The local board was also directed to submit to defendant SSS form 151, which would give him an opportunity to volunteer for civilian work. On October 10, 1967, defendant appeared before his local board and was presented with SSS form 151. The defendant refused to sign it. Defendant was reclassified I-A on the same day. On October 23, 1967, defendant appealed this classification. On December 9, 1967, the appeal board classified him I-A by a 5-0 vote. On November 14, 1967, defendant was declared delinquent for failure to have his registration card and classification card in his possession. He had turned his registration card over to a United States Marshal in demonstration against the draft on October 16, 1967. Defendant was ordered to report for induction on January 22, 1968. He reported but refused to be processed. The present indictment followed on March 1, 1968.

The government claims that defendant has failed to exhaust his administrative remedies, pointing to his refusal to report for his pre-induction physical on the date of September 25, 1967, as well as his refusal to undergo medical processing on the date of his induction order. The government maintains that in order to challenge his classification, defendant must first have submitted to medical processing, since a physical examination might have changed his classification. See Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944).

██ However, Pence's argument reaches beyond a mere attack upon the quantum of evidence justifying a I-A classification. He asserts that his reclassification was brought about unlawfully for punitive and extrinsic reasons totally unrelated to the merits of granting or continuing the exemption itself. This distinction was clearly established in Oestereich v. Selective Serv. System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed. 2d 402 (1968), where the Supreme Court allowed an attack upon a punitive reclassification to I-A of a defendant who rightfully possessed a statutory exemption. Such an attack is permitted without exhaustion of administrative remedies and notwithstanding the requirements of § 10(b) (3).[1] As Mr. Justice Douglas, speaking for the Court, stated:

"Once a person registers and qualifies for a *statutory exemption,* we

---

1. Section 10(b)(3) of the Selective Service Act (50 U.S.C.App. § 460(b) (3)) provides in part:
   "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either af-

firmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

find no legislative authority to deprive him of that exemption *because of conduct or activities unrelated to the merits of granting or continuing that exemption.*" (Emphasis ours.) 393 U.S. at 237, 89 S.Ct. at 416.[2]

Furthermore, he added:

"We would have a somewhat different problem were the contest over, say, the quantum of evidence necessary to sustain a Board's classification. Then we would not be able to say that it was plain on the record and on the fact of the Act that an exemption had been granted and there would therefore be no clash between § 10(b) (3) and another explicit provision of the Act." 393 U.S. at 238 n. 7, 89 S.Ct. at 417 n. 7.

The requirement that a party be "finally" aggrieved by exhausting his possibility of rejection is necessary to achieve full compliance and administrative regularity with the Selective Service laws. However, where a legislative exemption exists, and a local board withdraws this exemption for arbitrary and unauthorized reasons, the policy behind the exhaustion doctrine disappears. In these circumstances the board itself has acted outside the law and has thereby breached the administrative regularity deemed essential to the law itself. When this occurs there exists no compelling reasons for the individual to comply with the exhaustion requirements. To hold otherwise would be to sanction the perpetuation of discriminatory and lawless action of government itself. Cf. Clark v. Gabriel, 393 U.S. 256, 258, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

We therefore turn to the facts in David Pence's case. In 1967 he sought to be classified as a conscientious objector. As evidenced by his response to the conscientious objector questionnaire, he acknowledged the existence of a Supreme Being and stated, "it is this duty to the life-force or God, * * * that precludes for me as an individual participation in war." And he added:

"For me to share in God's life is to live in love and search for truth through human methods of love, openness, and understanding. To be true to these beliefs means much more than merely a negation of war. To be true to these beliefs means most profoundly an affirmation of love and openness in reaching truth in every human relationship and individual encounter. To be most true to these beliefs means to be bound to openness and love in search for truth and to respond to this bond rather than the dictates of any other human relationship which may demand of me a suspension of these values."

And he described to the board his background in the seminary and his experience in VISTA:

"I saw the foppery of violence in the fights I witnessed in my neighborhood. I saw the danger of violence when I saw the response of the older teenagers to the demagougery of Stokley Carmichael. I saw that to answer violence with violence only corrodes the goals of purposeful social change. To make democracy work and to renew society on foundations of truth and justice, I found violence self-defeating. To build something I have learned it is necessary to use the proper tools and materials. The 'war solution,' the fact that in any way 'might makes right' and violence in all forms denies peaceful means and truthful ends."

"In the seminary I was interested in new concepts of God. In my year in VISTA, I reaffirmed this interest to the extent of belief in the non-person God of my first statement. My year in VISTA has been a year of rethinking

---

2. The same distinction appears in Mr. Justice Douglas' concurring opinion in Clark v. Gabriel, 393 U.S. 256, 260, 89 S.Ct. 424, 427, 21 L.Ed.2d 418 (1968): "I would take a different view if this were a case where a registrant was moved from a CO (conscientious objector) classification to a 1–A *because he made a speech, unpopular with the Board.*" (Emphasis ours.)

my relationship to God and human society. It has been a year of applying an evolving philosophy of personalism to the non-violent way of life."

On the strength of these statements he was denied a I-O status (conscientious objector available for civilian work) but was classified I-A-O by his board on August 9, 1967. As such he was entitled to the statutory exemption provided under 50 U.S.C.App. § 456(j) which allowed him to be assigned to noncombatant service. Pence was ordered to report for his physical examination on September 25, 1967. Pence wrote to the board as to his reasons for refusing the physical. He stated he could not accept a I-A-O classification "as a matter of conscience." His refusal to report was then reported by the local board to the State Deputy Director of the Minnesota Selective Service. The latter reviewed his file and requested:

"[T]hat his classification be reopened * * * since *we believe this registrant is eligible for a Class I-O classification.*"

"At the time he appears before the local board for an interview he should be given an opportunity to sign an SSS Form 151." (Emphasis ours).

On October 10, 1967, Pence again appeared before his local board and pursuant to the Deputy Director's instruction he was handed SSS form 151 to sign as a volunteer for civilian work.[3] On the day Pence personally appeared before the local board for the recommended reclassification to the I-O status, he not only refused to volunteer for civilian work by signing SSS form 151, but also presented a written statement which reflected an oral statement made at that time.[4] Because of its significance we set forth this statement which reads as follows:

"On October 10, I appeared before Local Board #51 and explained my progression of belief in regard to war and the selective service system. I explained my history in the seminary and my year in VISTA. I explained how my belief grew from a disagreement with our basic policies in Vietnam and then to a disengagement with the selective service system and all acts of war in our society. I explained that the draft deferment system selectively discriminates against the poor and nonstudent members of society and also against those conscientious objectors not belonging to organized religion. *I tried to show that I felt this was responsible civil disobedience in that I explained my breaking of the law in terms of higher allegiances than the law of the land and also that I was willing to accept full responsibility for my actions.* In answer to an offer to sign for civilian work—I have refused because I believe that cooperation with an evil law is an implied acceptance of it. I have asked for a copy of the actions that transpired. I should add that at least 2 members of the board made it quite obvious that they felt this was an irresponsible action. I have also explained to one member's question that I registered when I was 18 because I did not question the values my registration affirmed. I now question them, 'I am no longer a little boy.' I have been treated fairly and courteously by this board. It is the law, not them personally, which I consider unjust." (Emphasis ours.)

On the same day, October 10, 1967, Pence was reclassified to I-A status. On October 18, 1967, the local board wrote to the State Deputy Director and told him that Pence had turned in his Selective Service cards and added that Pence had refused to sign the SSS form 151. On October 25, the State Director recom-

---

3. In May 1967, Pence had originally informed the board that if given a conscientious objector classification he was willing to perform for civilian work for two years.

4. A conscientious objector is not required to sign SSS form 151. The form merely provides an opportunity for a registrant to volunteer for civilian work. It is used largely to eliminate going through administrative channels otherwise required to order a registrant to report for civilian duty. See generally 32 C.F.R. § 1660.1 et seq.

mended turning the file over to the F.B.I. Defendant appealed his new classification on October 23, 1967, and the appeal board classified him I-A on December 9, 1967, by a 5–0 vote.

In Lewis v. Secretary, Dep't of Army, 402 F.2d 813 (9 Cir. 1968), which involved a draft board taking away a III-A exemption (deferred by reason of extreme hardship to dependent), the court stated:

"Our review of the record discloses that the facts before the Board are not in dispute, and that *there is no significant difference between the facts before the Board when it classified appellant III-A in 1964 and when it classified him I-A in 1966.*" Id. at 818. (Emphasis ours.)

On this basis the court of appeals reversed the defendant's conviction. It is well settled that reclassification of a registrant must be based upon some fact not considered in granting the original classification which would justify a change in classification. 32 C.F.R. §§ 1625.11, 1625.2, 1625.3. See also United States v. Carroll, 398 F.2d 651 (3 Cir. 1968); United States v. Brown, 290 F. Supp. 542 (D.Del.1968); United States v. Wymer, 284 F.Supp. 100 (S.D.Iowa 1968).

There were only three new factors which the state appeal board could have reviewed on December 9, 1967,[5] which were not before the local board on August 9, 1967, when Pence was given his original I-A-O classification. Two of these events occurred prior to the hearing of October 10, 1967, and therefore were also before the local board at the time it reclassified Pence I-A. These were (1) Pence's refusal to report for his physical examination of September 25, 1967, and his stated reasons for refusing to do so, and (2) Pence's oral and written statement of October 10, before the local board. The third event, which occurred after October 10, 1967, and which the state appeal board alone had before it, was Pence's turning in his draft cards on October 16, 1967, and being declared delinquent in November of 1967.

None of these incidents are in any way related to a factual change justifying a reclassification. A violation of the Selective Service laws cannot serve as a basis for a board's retaliation by depriving a selectee of a statutory exemption. Oestereich v. Selective Serv. System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968). Pence's statement before the board on October 10, 1967, does not in any way provide relevant affirmative evidence to change classification. Cf. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953). His speech relating to civil disobedience and opposition to the Selective Service laws as well as the Vietnam War does not detract from his previous statement reflecting his deep religious objection to serve in the military and bear arms. The First Amendment protects a conscientious objector as well as anyone else to the right of free speech and the right to dissent. The only possible inference this record affords is that David Pence's classification was changed from I-A-O to I-A because (1) he refused to volunteer for civilian work by signing SSS form 151 (cf. United States v. Wymer, 284 F.Supp. 100 (D.C.Iowa 1968)),[6] or (2) because he vocally protested the alleged unfairness of the Selec-

5. Classification by the appeal board is, of course, *de novo.* 32 C.F.R. § 1626.26(a). See DeRemer v. United States, 340 F. 2d 712 (8 Cir. 1965). Arbitrary and unlawful action of the lower board is not cured by *de novo* review, where the only possible basis for reclassification by either the local or appeal board is unrelated to the selectee's draft status. See United States v. Wymer, 284 F.Supp. 100, 104 (S.D.Iowa 1968).

6. As Chief Judge Stephenson so ably stated in United States v. Wymer, supra at 104:

"The classification of a conscientious objector into Class I-O is not conditioned on his acceptance of civilian employment, but on the sincerity of his beliefs. The refusal of the defendant to do civilian work in this case was not inconsistent with any of his prior positions or statements, and, therefore,

tive Service laws and his disbelief in the Vietnam War. Both facts are "totally unrelated to the granting or continuance" of the exemption.

If the evidence adduced demonstrated both an arbitrary reason for change of classification and a valid one, e. g., new evidence justifying reclassification, then this court would be required to accept the trial court's determination as to the real basis for the board's action. The trial court's ruling would then be subject to review only under the clearly erroneous rule. However, in the instant case the record is completely devoid of any change of circumstance or any withdrawal of Pence's previous sworn-to beliefs.[7] The only additional evidence before the local board was Pence's statement in which he professes his civil disobedience, but even this statement is undergirded in terms of "higher allegiance." Pence's attitude of civil disobedience first appears in his letter to the board in September 1967 refusing to report for a physical examination in relationship to his I-A-O classification. He there expressed his bewilderment at the local board's rejection of his claim to be a conscientious objector and the requirement to serve in the military. The State Deputy Director evidently shared this bewilderment. Notwithstanding Pence's contumacious stand, upon review of Pence's record the Deputy Director immediately directed the local board to reopen the classification to change Pence to the status of I-O, fully exempt from military service. The only bases this record affords of Pence's reclassification to I-A are ones for lawless reasons.

We repeat Chief Justice Hughes' observation in his dissent in United States v. MacIntosh, 283 U.S. 605, 633, 51 S.Ct. 570, 578, 75 L.Ed. 1302 (1931), that "in the forum of conscience, duty to a moral power higher than the state has always been maintained." Congress has recognized this principle by exemption from military combat any person who by "religious training and belief, is conscientiously opposed to participation in war in any form." 50 U.S.C.App. § 456(j). It is the duty of the courts and the draft board to observe this direction.

It is well recognized that religious principles do not justify any person becoming a law unto himself or to defy "the enlightened sentiments of mankind." Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1, 50, 10 S.Ct. 792, 805, 34 L.Ed. 478 (1889). If religious scruples drive men to civil or criminal disobedience in a society of law, the State is "supreme within its sphere and submission or punishment follows." 283 U.S. at 633, 51 S.Ct. at 578. However, any meaningful society based upon law strives to recognize those principles of individual conscience within reasonable bounds and to make meaningful the integrity of spiritual values to every extent possible without conflict with the public need. Congress has so enacted certain exemptions within the Selective Service laws. If these laws may be thwarted by reason of mere refusal to acquiesce in an alleged "voluntary" act requested by a local board or because officials of the state disagree with a selectee's political views then we substitute government of men for government of laws. This we refuse to do.

Judgment reversed with directions to enter a verdict of acquittal.

could have no bearing on his veracity or sincerity. Although the Court does not wish to foreclose the possibility that under certain circumstances a registrant's refusal to do civilian work may reflect unfavorably on his sincerity, it is clear that the defendant's refusal in this case did not constitute a 'basis in fact' for a reopening under § 1625.2(b). The Local Board acted outside its jurisdictional powers in reopening and reclassifying the defendant."

7. A selectee certifies the answers to SSS form 150 as a conscientious objector subject to fine or imprisonment for knowingly making a false answer. 50 U.S.C. App. § 462(a).