**UNITED STATES of America,
Plaintiff,**

v.

**Brian Palmer NELSON, Defendant.**

**No. 4–69 Cr. 6.**

United States District Court
D. Minnesota,
Fourth Division.

May 12, 1969.

and returned, stating that he had a belief in a Supreme Being and that he had been a member of the Jehovah Witnesses' Watchtower Bible and Tract Society, a religious organization since 1951, at which time he was approximately five years of age. Three letters in the file, one from his presiding minister, one from his assistant presiding minister and one from a friend substantiate this membership and proclaim the sincerity of defendant's beliefs. These were submitted to the board at its request.

The Selective Service File shows in all some 38 different numbered items and documents including defendant's classification as I-A on July 29, 1965; his later classification as II-S (student) on November 9, 1965; his reclassification on August 8, 1967 to I-A-O; his reclassification again on October 10, 1967 to I-A; his appeal to the Appeal Board for the State of Minnesota, which continued his classification as I-A by a vote of 4 to 0; and his ultimate notice of induction. Testimony was adduced from Lt. Petri of the Armed Forces Entrance and Examining Station to the effect that the defendant did appear at the induction station on May 2, 1968 but refused induction. He testified that on such refusal he invited the defendant to his office, and though he attempted to reason with him and advised him of the consequences of his action, he continued to refuse. The file further shows that after defendant's classification as I-A-O on August 8, 1967, he was reclassified I-A on October 10, 1967. Subsequently he refused on January 9, 1968 at the time of a personal appearance before the board to sign Form #151, an application of Volunteer for Civilian Work. His classification continued to remain I-A and was affirmed by the Appeal Board on February 17, 1968.

Patrick J. Foley, U. S. Atty., by Joseph T. Walbran, Asst. U. S. Atty., for plaintiff.

Albert V. Rosenbower, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

This is a Selective Service case tried to the court, with jury waived, pursuant to an indictment charging defendant with failing and neglecting to perform a duty required of him under the Military Selective Service Act by refusing induction into the armed services in violation of 50 U.S.C.App. § 462.

There is no question in the court's mind but that the defendant willfully and knowingly refused induction. He duly appeared at the induction station and deliberately refused to submit thereto. The court however has entered a judgment of acquittal on the ground that the defendant's classification has no basis in fact based on the record produced at trial.

Defendant's Selective Service File shows that he originally registered under the Selective Service system October 2, 1964. He indicated at that time on his Classification Questionnaire that he was a conscientious objector. He was mailed Form #150, which he completed

 The court does not believe that it should sit as a "super draft board" or review the wisdom of the exercised discretion by the local draft board. Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953); Witmer v. United States,

348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Vaughn v. United States, 404 F.2d 586, 589 (8th Cir. 1968). The court is bound, however, under Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) to determine or find that there was some basis in fact for the board's classification as I-A. Implicit in this, the other side of the coin so to speak, is that there must appear in the government's case some basis in fact for the board's refusal of defendant's request for classification as a conscientious objector, I-O (or I-A-O). If there has been shown to be some basis in fact, even though the board may have acted erroneously, or in a way other than the court would have acted, the court must and will accept the board's classification.

> "The decision of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567 (1946)

Since the time of this defendant's registration the Selective Service Act has in fact been amended to incorporate the rule of the Estep case therein. See 50 U.S.C. App. § 460(b) (3) which now reads in part as follows:

> " * * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is *no basis in fact* for the classification

assigned to such registrant." [Emphasis added]

The court need not approach the question of retroactivity of this 1967 amendment to the statute, because its provisions have been the law since the decision in the *Estep* case and the codification in the statutes is merely a restatement thereof.

The court has read each and every one of the 38 documents in defendant's Selective Service File, plus some later letters dated at the time the file was referred to the United States Attorney's office. Nowhere can the court find any "basis in fact" for the local board's action. No memorandum of any kind appears in the file, nor any statement of reasons for denial of defendant's conscientious objector status. The board obviously must have doubted defendant's sincerity, for that silent finding is implicit in the action the board took in classifying him as I-A. There is however no indication whatsoever as to why the board might have so found, such as previous violent conduct on defendant's part, confusion and contradiction in statements made in his personal appearances before the board, earlier contrary actions demonstrating insincerity, or any other factors which might form some basis in fact. All the file shows in reality is that defendant originally requested a I-O classification and ultimately received I-A. As the Supreme Court said in Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1955):

> "[T]he ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. * * * If, as here, the issue is the registrant's sincerity and good faith

belief, then there must be some inference of insincerity or bad faith."

The government did not call any local members of the draft board to testify as to why they classified the defendant as I-A (though the Assistant United States Attorney asserts to do so would have been improper) nor did the Secretary of the draft board who was on the witness stand assist the court in any way in attempting to set forth any facts as a basis on which the board acted. It seems to the court that it is incumbent in some way for the government, either from the file or by testimony adduced at the trial, to establish some basis in fact touching upon the registrant's insincerity or bad faith. In this regard, some courts have indicated that at least where there is ambiguity in the board's action, testimony from the mouths of members of the board may be taken as part of the government's case. See United States v. Gearey, 368 F.2d 144, 151 (2nd Cir. 1966), on remand, 266 F.Supp. 161 (S. D.N.Y. 1967), aff'd on appeal, 379 F.2d 915 (2nd Cir.), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); United States v. Jakobson, 325 F.2d 409, 417 (2nd Cir. 1963); and United States v. Balogh, 157 F.2d 939, 944 (2nd Cir. 1946), judgment vacated on other grounds, 329 U.S. 692, 67 S.Ct. 625, 91 L.Ed. 605 (1947).

The government attorney has argued at some length that three "bases in fact" actually appear in the file:

█ 1. Defendant's answers to some of the questions on Form #150 were somewhat incomplete. While the answers coming from a then 18 year old boy are not as erudite as might be, it is perfectly clear that defendant stated he believed in a Supreme Being; that "we obey God's commands first before man's commands. We believe that a person should not kill as the Bible commands us;" that he believed in the use of force only "to defend ourselves;" and that he had been a member of Jehovah's Witnesses "since 1951" and became a member thereof "through my mother and other Witnesses teaching me." He states he believes in "Bible Doctrine." Government counsel in attempting to demonstrate the inadequacy of this answer quoted in his argument several passages from the Bible wherein the use of force to conquer or otherwise is adverted to. This contention of the government must be rejected. A registrant's willingness to participate in "theocratic wars" or his willingness to use force in self-defense is not a valid objection standing alone to a denial of conscientious objector status. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); Taffs v. United States, 208 F.2d 329, 331 (8th Cir. 1953), cert. denied, 347 U.S. 928, 74 S. Ct. 532, 98 L.Ed. 1081 (1954).

█ The court has read and re-read Form #150 and holds it cannot furnish a basis in fact on its face for denying a conscientious objector classification. There is nothing inconsistent in the form; merely several somewhat incomplete answers.

2. On Item #37 in the Selective Service File, "Delinquent Registrant Report" dated May 21, 1968, it appears that defendant had had six moving traffic violations between the years 1963 and 1967; three for speeding; one for an illegal turn; and one in 1966 for driving after revocation of driver's license resulting in the imposition of a sentence of 15 days in the workhouse. Defendant also was charged with careless driving and leaving the scene of an accident, but at the time of the Report, he was apparently awaiting a jury trial and there had been no determination thereof or conviction. The government argues that there is something dishonest about driving after revocation and about "hit and run" (if in fact this is or was then anything more than a pending and undetermined charge) and that this could well form a basis in fact for the board's disbelief in defendant's sincerity in his conscientious objector claims. This material appears in the file for the first time on a document dated *after* defendant had refused induction on May 2, 1968. There is no showing by the government that the

Board ever knew of these offenses or in fact gave them any heed. Even so quaere whether unrelated traffic offenses can or could be a basis in fact. The court can understand that where a selective service registrant decries use of violence but has himself been convicted of crimes of violence such as armed assault, for instance, such might be a basis in fact for questioning a conscientious objector's sincerity and classifying him otherwise. It is hard, however, to relate traffic offenses this way or to put them in this category. The government attorney himself stated that minor derelictions generally are not and do not form nor constitute a basis in fact. In the court's opinion, these traffic offenses, even assuming the members of the local board were aware thereof, of which there is no showing, cannot be a basis in fact for defendant's classification.

3. Government counsel argues from the record that defendant was not honest with the local board in connection with his II-S student deferment classification. It appears from the file (#4) that on October 13, 1965 defendant was ordered to report for physical examination on October 27, 1965; that on October 18, 1965 the Minneapolis Business College submitted a student certification indicating that defendant was satisfactorily pursuing a full-time course of study; that thereupon his physical examination order was cancelled (#6) on October 22, 1965 and on November 9, 1965 defendant was classified as II-S until October 1966; that on October 3, 1966 the Minneapolis Business College again submitted a Student Certificate (#7) "Please renew as of October 1, 1966"; that defendant's classification remained unchanged and on July 12, 1967 defendant submitted "Current Information Questionnaire" (#11) in which he stated by filling in blanks in his handwriting that he graduated from high school in June 1964 and "I have completed 1 years of college, majoring in BA at Minneapolis Business College and have not received a degree;" that in the meantime defendant had been mailed

regularly and from time to time Form SS 110 reminding him to advise the local board promptly and within ten days of any change of circumstances; that on August 8, 1967 he was classified I-A-O; on September 12, 1967, defendant appeared personally for a hearing before the board to discuss his classification but no record by the board of what transpired thereat appears in the file or otherwise. Thereafter on October 10, 1967 the defendant was classified I-A by the board.

The government contends that since the period of time from October 18, 1965 through July 12, 1967 is approximately 1 year and 9 months and since defendant filled in the blank on the current information form in July 1967 stating that he had 1 year of college, he was not honest with the draft board in that either he deliberately concealed his status or he was remiss by not informing the board earlier that he was no longer in school. There is no showing of course that defendant was not actually enrolled both in October 1965 and again in October 1966. The board undoubtedly could presume the school would not so certify unless such was the case. The inference can as easily be drawn that defendant actually attended the school for a period longer than one year but accumulated only one year's credits, particularly if his last attendance was poor scholastically and ultimately he dropped out. From the record, the court cannot tell what the draft board had before it or what the facts actually were or are in this regard. *Estep supra* requires a basis in fact— not a basis of conjecture or pure speculation. The court does not believe the above constitutes a basis in fact.

 The government's argument as to this third basis in fact also must be rejected because the local board had all this information before it as to his student status when it classified the defendant I-A-O on August 8, 1967. If the board then had doubted the defendant's sincerity, presumably they would not have classified him I-A-O at that time. Indeed, without any new evidence,

it is difficult for the court to understand how the board could classify the defendant I-A-O, a classification under 32 C.F.R. § 1622.11 wherein the registrant "has been found, by reason of religious training and belief, to be conscientiously opposed to combatant training and service in the armed forces," and then two months later classify the defendant I-A. As stated by the Eighth Circuit in the recent case of United States v. Pence, 410 F.2d 557 (8th Cir. 5/1/69):

> "It is well settled that reclassification of a registrant must be based upon some fact not considered in granting the original classification which would justify a change in classification. 32 C.F.R. §§ 1625.11, 1625.2, 1625.3. See also United States v. Carroll, 398 F.2d 651 (3 Cir. 1968); United States v. Brown, 290 F.Supp. 542 (D.Del. 1968); United States v. Wymer, 284 F.Supp. 100 (S.D.Iowa 1968)."

See also Lewis v. Secretary, Dep't of Army, 402 F.2d 813 (9th Cir. 1968). *Pence* involved a registrant who was denied a I-O status but was classified I-A-O by his local board. Thereafter Pence was ordered to report for his physical examination, but he refused. Pence stated that he could not accept his I-A-O classification "as a matter of conscience." While the State Deputy Director of the Minnesota Selective Service later recommended that Pence be classified I-O, the local board classified him I-A after granting him an appearance. At this appearance Pence refused to volunteer for civilian work and presented a written statement in which he expressed dissatisfaction with the Vietnam War and the selective service system in general. In reversing a judgment of conviction, the Eighth Circuit found the record "completely devoid of any change of circumstance or any withdrawal of Pence's previous sworn-to beliefs" which were the basis of his I-A-O so as to justify a I-A reclassification. The case at bar is similar to the *Pence* case in that there is no basis in fact shown or demonstrated in the government's case for reclassifying the defendant I-A after he was given a I-A-O classification. Certainly the board must have been impressed with the defendant's sincerity to classify him I-A-O. The file at this time contained all the information concerning the II-S incident.

Government counsel states that Regulations do not require a local board to make findings nor to put into the file any reasons for their decisions. He states that heretofore, when such was done or permitted, Boards "got themselves in trouble," and were advised not to do so. It is unfortunate from the government's point of view in a case such as at bar that no reasons were given because there simply is not a basis in fact to substantiate defendant's present classification of I-A, or, put another way, to sustain the board's refusal to classify defendant I-O.

Another recent case, refusing to convict, is United States v. Ruud, 299 F. Supp. 408 (D.N.D. 4/28/69), finding no basis in fact for the local board's classification.

For the reasons above, the court finds defendant not guilty.