**UNITED STATES of America, Plaintiff,**

v.

**James Clarence FOSTER, Defendant.**

**Crim. No. 4–1357–C.**

United States District Court,
S. D. Iowa, C. D.

Feb. 24, 1970.

Allen L. Donielson, U.S. Atty., Claude Freeman, and Richard Barry, Asst. U.S. Attys., for plaintiff.

Richard M. Batcher, Davenport, Iowa, for defendant.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

On March 26, 1969, the grand jury returned an indictment charging the de-

fendant, James Clarence Foster, with wilfully and knowingly failing and neglecting to comply with an order of his local Selective Service Board to report for civilian work at Goodwill Industries, East 26th and Euclid Avenue, Des Moines, Iowa, and to remain in such employment for twenty-four consecutive months or until such time as released by proper authority, in violation of 50 U.S. C. App. § 462. The defendant waived a jury trial in writing and requested that he be tried by the Court. The Government consented thereto, and the case was tried to the Court on December 11, 1969. Final briefs were filed December 22 and 29, 1969.

The chronological sequence of events giving rise to the charge herein was brought out at trial and stands largely undisputed.

Defendant first registered with the Selective Service System on January 23, 1963, at Local Board No. 13–94 of Wayne County, Iowa, hereinafter referred to as the Local Board. On March 3, 1963, defendant filed SSS Form No. 150, Special Form for Conscientious Objector, with the Local Board. He was classified I-O (conscientious objector available for civilian work contributing to the maintenance of the national health, safety or interest) on January 22, 1964.

On October 21, 1965, defendant filed a request that his classification be reopened and considered anew together with several documents in support of a claim for a IV-D (minister of religion) classification. (See Exhibit 1-G). Included with these documents were letters from John H. Lindegard, Presiding Minister, Rock Island Congregation of Jehovah's Witnesses, and from H. Daniel Trapp, Assistant Presiding Minister. The Lindegard letter read as follows:

Concerning the Ministry of James Foster and his affiliation with the Rock Island, Illinois Congregation of Jehovah's Witnesses.

Mr. Foster has been associated with the Rock Island Congregation for more than two years.

In July 1964 he was baptized and Dedicated his life to the service of the One and only True God, Jehovah.

During the time Mr. Foster has been associated with the Rock Island Congregation he has continually progressed in maturity and in the Ministry patterned for us by Jesus Christ and His Apostles.

This activity consists of regularly attending the five meetings held every week. The Public Talk on Sunday, the Bible Study, using the Watchtower magazine, on Sunday, the Home Bible Study on Tuesday, the Theocratic Ministry School on Thursday and the Service Meeting on Thursday. Each of these meetings are one hour long and the preparation and study required for them is at least an hour each. There are ten hours a week devoted to study and attending meetings.

This preparation is necessary to prepare a person for the Ministry of Jehovah's Witnesses. This activity consists of calling on the homes of people in our assigned territory, making return visits on interested persons, and conducting Bible Studies in the homes of those who so desire. Mr. Foster engages in all of these activities, averaging between fifteen and twenty hours a month.

In addition to these activities Mr. Foster also prepares and gives talks in the Theocratic Ministry School. Gives talks, demonstrations, and handles other parts on the Service Meetings. These additional privileges of course require more preparation and study than is normally engaged in.

Mr. Foster is also the Accounts Servant for the Congregation. This is similar to the secretary-treasurer position in other organizations.

He receives, records, and remits monies for expenses, subscriptions, literature, magazines, and any other financial matters that may arise.

He is also the Assistant Bible Study Conductor at the Tuesday evening

Home Bible Study. In the absence of the regular conductor he presides over the study and this too is training for further responsibilities and assignments.

I am personally acquainted with James Foster. I appreciate him as a friend and a fellow Witness of Jehovah. He is a clean-cut, well behaved, young man and is sincerely dedicated to his chosen vocation. The Preaching of the Good News of God's Kingdom, as commanded at Mathew Chapter twenty four verse 14. (Mt. 24:14)

The Trapp letter read in part as follows:

I have charge of the ministerial records of every member of the congregation. My records show James has spent on the average 15.3 hours every month during the past year in the field ministry preaching and teaching the principles of religion. This includes giving regular weekly Bible lessons in several private homes in Rock Island.

In addition to this preaching, he attends and participates in five one-hour ministry development classes each week, conducting portions of these classes himself. Naturally many hours of personal Bible study are also required of him in order to prepare for these classes and the rest of his ministry.

On August 5, 1965 James was appointed an officer of the Rock Island, Illinois Congregation. The appointment was made by the Watchtower Bible & Tract Society of Brooklyn, New York, legal governing agency for Jehovah's Witnesses. In this capacity he serves as an assistant to our presiding minister, Mr. John Lindegard, and is charged with the responsibility of caring for various congregation records and funds.

Both James' parents are Jehovah's Witnesses and he has been reared in this faith. He moved to Rock Island in December 1963 and I have been acquainted with him since this time. I think he is very sincerely following his vocation as a minister and is helping his community by doing so. He is recognized by this organization as a minister and as such can preside at funerals, solemnize marriages and perform such articles and ordinances of religion as may become necessary.

On October 26, 1965, the Local Board forwarded this material to the Iowa State Director of the Selective Service System, with a request for recommendation (Exhibit 1-H). On November 1, Col. David W. Ash, Legal Advisor, wrote to the Local Board recommending that Foster be classified IV-D (Exhibit 1-I). Foster was classified IV-D by the Local Board on November 22, 1965.

On September 15, 1966, the Local Board mailed SSS Form 127, Current Information Questionnaire, to the defendant, together with a form letter requesting him to supply current information relative to his IV-D classification. Defendant returned the completed Form 127, together with a letter from John H. Lindegard, on September 19, 1966. (See Exhibit 1-L). On the Form 127, Foster stated that his present job was "Assembler," employed by the John Deere Planter Works, Moline, Illinois. The Lindegard letter read as follows:

In reply to your letter of September 14, 1966, concerning the classification of James Clarence Foster with the Selective Service System.

Mr. Foster has been for the past year, and still is, an ordained Minister of Jehovah, and is associated with Jehovah's Witnesses.

He has consistently averaged more than ten hours per month in the active Ministry of Jehovah's Witnesses. This is exclusive of the time he has devoted to studying and preparing for various assignments, such as the Home Bible Study he conducts on Tuesday evening, a Congregation sponsored meeting, the Service Meeting on Thursday evening and the Theocratic Ministry School on the same evening. He also participates in

the Sunday afternoon Watchtower Study wherein we discuss various subjects contained in the Bible.

Mr. Foster is still assigned as a Bible Study Conductor and Service Center Leader, and is still the Accounts servant or treasurer for The Rock Island Congregation of Jehovah's Witnesses. These positions are assigned by the Watchtower Bible and Tract Scy., of Brooklyn, New York, the corporate organization for Jehovah's Witnesses.

I am in personal contact with Mr. Foster each week and can state that he is a serious, conscientious, Minister and student of the Bible associated with the Rock Island Congregation of Jehovah's Witnesses.

On September 20, 1966, the defendant's Selective Service file was again mailed to the State Director with a letter (Exhibit 1-4) requesting a review of the current information in the file and a recommendation as to whether the defendant should be continued in class IV-D. The file was returned to the Local Board on October 3, 1966, with a notation, penciled on the Board's letter as follows: "O-K IV-D Ash." "Ash" refers to Col. David W. Ash. On October 11, 1966, the Local Board reviewed Foster's file and continued him in class IV-D.

On September 26, 1967, the Local Board received a letter (Exhibit 1-6) from Foster notifying them that he had terminated his employment at John Deere and had leased a small service station. He stated that he had changed employment:

* * * because it is closer to my place of residence, and it will provide my brother with part time employment. I hope soon to split the time spent at the station more evenly between us, thus allowing me more time to engage in the house-to-house preaching work of my faith.

The Local Board mailed defendant a Form 127 on October 24, 1967. He completed the form (Exhibit 1-W) and returned it on November 6, 1967. On the Form 127, defendant stated that he was employed as a service station operator. As "other occupational qualifications, including hobbies, I possess," he listed "Minister of Jehovah's Witnesses." The Local Board also received a letter (Exhibit 1-M) dated November 2, 1967, from John H. Lindegard, which stated as follows:

Concerning the Ministry of James Clarence Foster:

James is still actively associated with the Rock Island Congregation of Jehovah's Witnesses.

For the past service year he averaged over 10 hours a month in the preaching activity. This does not include the time he spends as a Bible Study Conductor at one of the Congregation assigned locations. Or the time he spends studying and attending the meetings and taking part in them.

He also spends considerable time as the account servant or treasurer for the congregation.

Although Jehovah's Witnesses spend much time for and with the congregations they are associated with the only time they count as ministers is the time they are out contacting the general public.

I am in contact with James every week and personally know that he is just as sincere and devoted to the Ministry of· Jehovah's Witnesses as when I first met him.

Without requesting a review or advice from the State Headquarters,[1] the Local Board reopened Foster's classification and reclassified him I-O on November 14, 1967. A classification memorandum (Exhibit 1-O) prepared, except for the "Classification" section, prior to the meeting, was initialled by the Board

---

[1]. The Court does not mean to imply that any error was committed by the Local Board in considering the defendant's file without requesting review and recommendation from State Headquarters. No regulation has been cited to the Court or found that requires such action.

members at the meeting, and placed in defendant's file. Under the heading "Remarks," appears the following statement: "See 127 & letter of 11-2-67 by Lindegard—10 hrs a month in preaching activity—127 shows reg. employed as Svc Station operator." Also placed in defendant's file was a statement (Exhibit 1-N), prepared after the meeting and signed by the Board members present, which read as follows:

After consideration of the information in the file we conclude the registrant is no longer eligible for class 4-D. By his own statement on Current Information Questionnaire (SSS Form 127) his primary employment is as a service station operator.

We therefore classify this registrant in class I-O.

Attached to this statement is a document which reads as follows:

Ref: SSR 1622.43(b) (3)

According to information submitted prior to Board meeting Nov. 14, 1967 it would seem that registrant irregularly or incidentally preaches and teaches — SSS-127 — employment — Service Station Operator.

Letter dated Nov. 2, 1967 from John H. Lindegard states registrant has averaged 10 hours a month in preaching activity for past service year, but is not specific regarding amount of time spent in related activities.

The defendant was duly notified of the reclassification and of his appeal rights. He appealed his classification, and the Appeal Board classified him I-O by unanimous vote on January 29, 1968.

On December 24, 1968, the Local Board mailed an Order to Report for Civilian Work, SSS Form 153, to defendant, instructing him to report to Goodwill Industries, East 26th and Euclid Avenue, Des Moines, Iowa, at 9:00 a. m. on January 20, 1969. The defendant reported as ordered, but refused to work for Goodwill Industries.

■ It is well settled that "it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations." Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 99 L.Ed. 428 (1955); Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Troutman, 412 F.2d 810 (8th Cir. 1969). This Court is permitted to overturn a draft classification only if it has "no basis in fact," 50 U.S.C. App. § 460(b) (3); Estep v. United States, 327 U.S. 114, 122, 66 S. Ct. 423, 90 L.Ed. 567 (1946); Vaughn v. United States, 404 F.2d 586, 589 (8th Cir. 1968); or if the action of the Local Board is found to have had the effect of denying defendant basic procedural fairness. Vaughn v. United States, *supra,* at 590.

■■ It is also well settled that a registrant bears the burden of establishing his right to an exemption, and he has a duty to keep his draft board informed of reasonably current information in support of his claim to an exemption. 32 C.F.R. §§ 1622.1, 1625.2; Pittman v. United States, 411 F.2d 635 (10th Cir. 1969); United States v. Wymer, 284 F.Supp. 100 (S.D. Iowa 1968). However, when a registrant makes out a prima facie case placing him within a statutory exemption, there must be some basis in fact, other than suspicion or speculation, not considered when the original classification was granted, which would justify a change in classification. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953); United States v. Pence, 410 F. 2d 557 (8th Cir. 1969); United States v. Wymer, 284 F.Supp. 100 (S.D. Iowa 1968).

Looking at the record, it appears that there were only two facts before the Local Board in 1967 which differed from those known at the time Foster was classified IV-D in 1965. The first such fact was Foster's change of employment from assembler to service station operator. The second fact is the decrease in

preaching activity from 15–20 hours a month in 1965 to 10 hours in 1966 and 1967. The comments on Exhibit 1-N and 1-O indicate that these were the only factors on which the Local Board relied in reopening Foster's classification and reclassifying him I-O.

■ The Government argues that: "The average adult person would consider that the leasing of a service station would take more time than the forty hours per week the defendant was working at the John Deere Tractor Works in Moline." If this be so, it would nonetheless amount to no more than "suspicion or speculation" on the part of the Local Board. See Dickinson v. United States, *supra,* at 397, 74 S.Ct. 152. The change of employment, evidenced to the Local Board by Exhibits 1-6 and 1-W, standing alone, does not indicate any decrease in ministerial activity. As stated by the Supreme Court in *Dickinson, supra,* at 395–396, 74 S.Ct. at 157:

Many preachers  *  *  *  may not be blessed with congregations or parishes capable of paying them a living wage. A statutory ban on all secular work would mete out draft exemptions with an uneven hand, to the detriment of those who minister to the poor and thus need some secular work in order to survive.

■ The Government further argues that the letter from John H. Lindegard, dated November 2, 1967, was "sketchy" and "showed such a substantial reduction in time spent" in his ministry that it showed that Foster was clearly not entitled to a IV-D classification. It is true that the 1967 letter was considerably shorter than those submitted in 1965 or 1966. However, the 1967 letter does not indicate any decrease in activity from 1966. The Presiding Minister's letter of September 19, 1966, indicated the decrease from 15–20 hours to 10 hours per month spent in door-to-door preaching. The 1967 letter also indicated 10 hours per month was spent in door-to-door preaching. Neither the 1966 nor the 1967 letter was "specific" as to the number of hours spent in related activities.

Although the total number of hours spent in all aspects of the ministry was not set out in either letter, both letters did indicate that Foster was continuing to study for and attend various meetings, that he was still serving as Bible Study Conductor and Accounts Servant. It would not be unreasonable for Foster and Lindegard to believe that the detailed statements submitted in 1965 as justification for the initial IV-D classification would not have to be resubmitted year after year. On the other hand, if the Local Board had doubts as to whether Foster was spending as much time on his ministry in 1967 as he was in 1965, they could have required more detailed information. Selective Service boards have great powers to aid them in obtaining the information needed to satisfy themselves as to the eligibility of a registrant for a particular classification. A local board may question a registrant under oath, subpoena witnesses to testify, and require both registrants and witnesses to produce documents. 32 C.F.R. § 1621.15. The local boards are also authorized to obtain information from local, state and national welfare and governmental agencies. 32 C.F.R. § 1621.-14. Foster's Local Board did not avail itself of any of these fact-finding procedures before reclassifying him based on the Form 127 and the Lindegard letter.

From the record as a whole, it is obvious that there was no affirmative evidence inconsistent with defendant's claim of exemption, other than suspicion or speculation, to justify reopening and reclassification, and that the action of Local Board 13–94 of Wayne County, Iowa, in reopening the classification of the defendant, James Clarence Foster, and reclassifying him I-O was based solely on suspicion and speculation, and had no basis in fact. All proceedings pursuant thereto were thereby rendered

void. Judgment of acquittal should therefore be entered.

It is ordered that judgment of acquittal be entered in favor of the defendant, James Clarence Foster.