**UNITED STATES of America**
v.
**Eugene Alfred BERG.**
**Crim. No. 70–15.**

United States District Court,
D. Maine, S. D.
March 31, 1970.

---

Peter Mills, U. S. Atty., Edward G. Hudon, Asst. U. S. Atty., Portland, Me., Col. Clarence R. Harris, Alexandria, Va., for plaintiff.

Cushman D. Anthony, Portland, Me., for defendant.

## MEMORANDUM OF OPINION AND ORDER

GIGNOUX, District Judge.

In this case, tried to the Court without a jury, Eugene Alfred Berg is charged with refusing to submit to induction into the armed forces of the United States in violation of 50 U.S.C. App. § 462(a) (1967). The principal and decisive issue presented is whether defendant's Selective Service record reveals any "basis in fact" for the denial of his request for classification as a conscientious objector. 50 U.S.C. App. § 460(b) (3) (1967); Estep v. United States, 327 U.S. 114, 122–123, 66 S.Ct. 423, 90 L.Ed. 567 (1946); Dickinson v. United States, 346 U.S. 389, 394, 396–397, 74 S.Ct. 152, 98 L.Ed. 132 (1953). The relevant record consists of defendant's Selective Service file as supplemented by testimony of the State Selective Service Director, the defendant, and the defendant's pastor.

There is no dispute as to the essential facts. On August 29, 1962, seven days after his 18th birthday, the defendant registered with his Local Selective Service Board in Portland, Maine. In his Classification Questionnaire (SSS Form 100), filed April 14, 1964, he reported that he was a student preparing for the ministry, but made no claim of conscientious objector status. He was then in fact studying for the Roman Catholic priesthood at St. Thomas Seminary in Bloomfield, Connecticut, and subsequently transferred to St. Mary's Seminary in Baltimore, Maryland. Accordingly, on April 24, 1964, defendant was classified IV–D (Divinity student exemption). Defendant withdrew from the seminary in the Summer of 1965 and enrolled as a student at the University of Maine. On August 27, 1965 he duly notified his Local Board of this change in his status, and on November 2, 1965 he was reclassified II–S (Student deferment), a classification which he maintained until August 1968.

In February 1967 defendant was ordered to report, and did report, for a physical examination, and was found "acceptable" on March 13, 1967. On March 25, 1967, defendant wrote his Local Board stating that "after much prayer and thought, I have decided that I cannot, in good conscience, serve in the military forces," and requesting SSS Form 150, the "Special Form for Conscientious Objector." This form was sent to defendant, and the completed form was returned to the Board on April 17, 1967. In his extensive answers to the questions on this form, defendant affirmed his belief in a Supreme Being; his membership in the Roman Catholic Church; his conviction that there could not be today "a just war" within the requirements of Catholic doctrine; and his conscientious duty as a Catholic not to participate in any military organization. Accompanying the Form 150 were letters from three teachers and his pastor attesting to the sincerity of his views

and, in the case of the pastor, further stating that defendant's views fall "within the latitude of the orthodox teachings of the Catholic Church." Apparently because of his continued status as a student, the Local Board took no action upon defendant's request at this time, and a year later, on July 2, 1968, prior to any Board action upon his request, he filed with the Board a further written statement amplifying the views he had previously expressed.

On August 5, 1968 the Board acted upon defendant's request for classification as a conscientious objector by classifying him I–A (Available for military service). The file contains no explanation of the reason for the Board's action other than the docket entry "Registrant claim did not warrant consideration for I–O (Conscientious objector) classification," and a "2–Way Memo" apparently completed by the Clerk reading as follows:

> * request as a Conscientious Objector —even though he is a Catholic...... Could find any data submitted to substantiate the claim for Conscientious Objector--------

> Classification I–A
> Vote 3 to 0
> Date 8/5/68

On August 6, 1968 the Local Board mailed defendant notice of his I–A classification, and on September 1, 1968 he requested a personal appearance. This was had on November 7, 1968, following which defendant was reclassified I–A–O (Conscientious objector available for noncombatant military service only). The minutes of this interview read *in toto*:

> Appear for interview & Father McGillicuddy appear in his behalf ------ this date.......
> Classify I–A–O
> 4–O.

However, defendant's summary of what transpired, the accuracy and completeness of which is not questioned, discloses that defendant informed the Board of his belief that even noncombatant service in the armed forces was forbidden by the Church's doctrine of "material cooperation," *i. e.,* that

> [T]he purpose of the army is to fight wars—an immoral purpose. To enter an organization whose main purpose is sinful is in itself a sin. And even if I could save the world by committing one sin, I should not do it. Likewise, even though one could do a lot of good as a medic, since it is immoral to enter the army, then one should not become a medic.

Defendant's pastor again affirmed to the Board that defendant was sincere, that he was an informed Catholic, and that his position was within the teachings of the Church.

On December 4, 1968 defendant appealed his I–A–O classification to the State Appeal Board, adding to his file xerox excerpts from a Catholic textbook, a further written amplification of his views, and the summary of what took place at his personal appearance. On January 22, 1969 the Appeal Board voted 3–2 to reclassify defendant I–A, the only formal record being that of the vote taken. Defendant then appealed to the President, adding to his file additional supporting materials further explaining the basis in Catholic teaching of his opposition to all war and to military service of any kind. On May 13, 1969, the Presidential Appeal Board reclassified the defendant I–A–O, again the only record being that of the vote itself.

Defendant received a graduate degree from the University of Maine on June 6, 1969, and on June 11, 1969 he was ordered to report for induction on July 16, 1969. On the latter date he did so report but refused to take the fateful step forward. His indictment and this prosecution followed.

■ The Court is aware that the scope of judicial review of Selective Service classification decisions is "the narrowest known to the law." Blalock v. United States, 247 F.2d 615, 619 (4th Cir. 1957). The Court also recognizes that "it is not for the courts to sit as

super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. The classification can be overturned only if it has 'no basis in fact.'" Witmer v. United States, 348 U.S. 375, 380–381, 75 S.Ct. 392, 395, 99 L.Ed. 428 (1955) (citations omitted). But in the present case the Court can find no "basis in fact" in defendant's Selective Service record for denying his request for classification as a conscientious objector. Absent any such basis, his induction order. is unlawful and this prosecution must fail. Estep v. United States, *supra*; Dickinson v. United States, *supra*.

There is no suggestion in this record that defendant's views are not sincerely held or that they are not religious in origin and nature. *See* United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). There are no inconsistencies in his statements or actions which would warrant denial of the classification he claims. *See* Witmer v. United States, *supra*. Indeed, by granting defendant a I–A–O classification, both the Local Board and the Presidential Board necessarily acknowledged both that he was sincere in his belief and that his belief was an essential part of his religious faith. United States v. Nelson, 299 F.Supp. 300, 305 (D.Minn. 1969). This much the Government concedes. It is, therefore, unnecessary to search the record for a basis in fact to support a finding of insincerity. The only question presented in this case is whether there is a basis in fact for a judgment that defendant's beliefs do not meet the statutory requirement of opposition to "participation in war in any form," 50 U.S.C. App. § 456(j) (1967); 32 C.F.R. § 1622.14 (1969). Sicurella v. United States, 348 U.S. 385, 388, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Curry, 410 F.2d 1297, 1298, n. 1 (1st Cir. 1969).

The file discloses that defendant was baptized and raised in the Roman Catholic Church and is today a practicing Catholic. In setting forth his beliefs, he first recognizes the traditional Catholic doctrine of "just" and "unjust" wars, as grounded in the teachings of St. Thomas. An aggressive war is "unjust" and therefore is always sinful. A defensive war on the other hand can be "just," but only when all means of peaceful settlement have failed and the evils of the war do not outweigh the good results to be obtained. Defendant believes (as do several Catholic thinkers cited by him, including two recent Popes and three Cardinals) that the conditions for a "just" war can no longer be met under the circumstances of contemporary warfare, and that therefore all wars are now "unjust." Defendant then points out that the Catholic doctrine of cooperation, *i. e.*, "concurrence with another person in a sinful action," prevents him from participating in any war in any capacity whatsoever. Cooperation, he asserts, takes two forms: formal and material. Formal cooperation is active participation in the sin itself. Material cooperation, as defined in the Catholic textbook, "Moral Guidance," which defendant cites, is "that which, without approving another's wrongdoing * * * [helps] him to perform his sinful action by an act that is not of its nature sinful." *Id.* at 47. This, defendant maintains, is exactly what is demanded of a I–A–O registrant. He believes that he would be unable in good conscience to serve in that capacity and that a jail sentence would be for him a preferable solution.

It is difficult to conceive of a more lucid and unambiguous declaration of religiously motivated opposition to "participation in war in any form." Why, then, was defendant denied a I–O classification? The Board gave no reason for its action, and the Government has been unable to suggest one. The Court can see only two plausible reasons for the Board's action: first, that the Board questioned the validity of defendant's beliefs; second, that the Board was of the view that I–O status could not legally

be granted to one who was not a member of one of the so-called "peace churches," an essential tenet of which is conscientious objection to all wars. If the Board's action was predicated upon either of these grounds, it would be a clear error of law, vitiating the entire proceeding. United States v. Seeger, *supra*, 380 U.S. at 184–185, 85 S.Ct. 850, 13 L.Ed.2d 733; Bates v. Commander, First Coast Guard District, 413 F.2d 475, 479 (1st Cir. 1969); United States v. Shevenell, 310 F.Supp. 1069 (D.Me., Mar. 31, 1970).

Since there is revealed in defendant's Selective Service record no "basis in fact" for denying his request for classification as a conscientious objector, the induction order upon which this prosecution rests is invalid and defendant is not guilty of the offense charged in the indictment.

Judgment will be entered directing that the defendant be discharged.

It is so ordered.